MARGARET B. SPAGNUOLO, PLAINTIFF-APPELLANT, v. JOSEPH A. BONNET, FORMERLY SHERIFF OF ESSEX COUNTY, NEIL G. DUFFY, SHERIFF OF ESSEX COUNTY, JOHN E. CASH, TREASURER OF THE COUNTY OF ESSEX, AND COUNTY OF ESSEX, DEFENDANTS-RESPONDENTS, AND UNITED STATES OF AMERICA, INTERVENOR-APPELLANT.

Argued November 1, 1954—Decided November 29, 1954.

547

Mr. *Walter D. Van Riper* argued the cause for the plaintiff-appellant (*Messrs. Van Riper & Belmont,* attorneys).

Mr. *Fred E. Youngman,* of the District of Columbia Bar, Special Assistant Attorney-General of the United States, argued the cause for the intervenor-appellant (*Mr. Raymond Del Tufo, Jr.,* United States Attorney; *Mr. H. Brian Holland,* Assistant Attorney-General; *Mr. Andrew D. Sharpe* and *Mr. F. A. Michels,* Special Assistants to the Attorney-General; *Mr. George J. Rossi,* Assistant United States Attorney, on the brief).

Mr. *Marshall Crowley* argued the cause for the respondents.

The opinion of the court was delivered by

OLIPHANT, J. This case concerns the title to money seized by police in a raid on the headquarters of a lottery operation.

As the result of incriminating information obtained police officers on March 2, 1951 raided the home of one A. Edward Spagnuolo at 536 South 20th Street in Newark. After being admitted to the house by Mrs. Spagnuolo the officers were led to the bedroom occupied by herself and husband. In a dresser drawer were found lists of numbers sold, result slips, a list of agents, names of players and bill wrappers. In a small iron safe, in a corner of the bedroom, were found a list of some agents, a list of numbers sold and result slips. There was a small locked compartment in the safe for which Mrs. Spagnuolo produced the key. Upon it being opened $50,000 in cash was found, removed and taken to the office of the Sheriff of Essex County.

Upon being arrested Spagnuolo admitted that he, with others, had for some time conducted a lottery. He was indicted on two counts for violation of *R. S.* 2:135-3 to which he pleaded *non-vult,* and on June 20, 1951 was sentenced to the State Prison for a term of one to two years.

On March 19, 1951 the Commissioner of Internal Revenue made a jeopardy assessment against A. Edward Spagnuolo of additional income taxes in the amount of $85,664.04 with interest and penalty. On March 21, 1951 he gave notice of the assessment to Spagnuolo, filed a notice of lien in the Essex County Register of Deed's Office and served a notice of levy together with a warrant of distraint and notice of tax lien on the Sheriff of Essex County who had possession of the seized $50,000. 26 *U. S. C. A.,* §§ 3670, 3671, 3672.

Because of the levy and distraint by the Collector the sheriff was compelled to retain the $50,000 in his possession although the usual procedure would have been to deposit the money with the county treasurer subject to the supervision of the prosecutor. *R. S.* 2:178-7.2, now *N. J. S.* 2A:152-8.

On January 28, 1952 the plaintiff here, who is the mother of A. Edward Spagnuolo, instituted suit against the Sheriff of Essex County claiming the $50,000 as her property. The

sheriff, not claiming the money in his own right, filed a counterclaim for interpleader and obtained an order adding as additional defendants the United States of America, the Collector of Internal Revenue, A. Edward Spagnuolo, Lillian Spagnuolo, his wife, John E. Cash, Treasurer of Essex County, and the County of Essex. Upon motion there was a dismissal as to the United States and the Collector, and by the same order the United States was granted leave to intervene to assert its alleged lien, and thereupon it filed a petition in intervention by which it sought a judgment that the $50,000 was the property of A. Edward Spagnuolo on and after March 21, 1951, the date of its alleged lien for income taxes, and subject thereto.

Spagnuolo and his wife Lillian failed to answer the counterclaim for interpleader and at the time of the pretrial conference judgment by default was entered against them.

Under the pretrial order the factual issues to be tried were limited to the following: (1) Was the plaintiff the owner of the currency in question; (2) whether or not the plaintiff is the owner of the currency, was it earmarked and segregated and being held as part of a gambling operation, namely, the lottery at 536 South 20th Street, Newark; (3) whether the fund of $50,000 was the property of A. Edward Spagnuolo against whom the United States asserts a claim for unpaid income taxes; and the determination of the question of priority between the United States and the County of Essex, if it be determined that the money was the property of A. Edward Spagnuolo.

By consent of counsel the case was tried before the court without a jury and Judge Daniel A. Brennan, after hearing the testimony, adjudged that the $50,000 was not the property of the plaintiff but that of A. Edward Spagnuolo and that that money was employed by him in his gambling operations and was as such contraband of the law; that the money was received and held by Spagnuolo in those gambling operations, earmarked and segregated for gambling purposes; that it was contraband when seized and still remained contraband at the precise time it was seized and its legal status never

changed. The judgment provided that the money be forfeited to the County of Essex and be paid over to the treasurer of that county. The judgment further sets forth that as of March 2, 1951, the date of the seizure of the money, the United States had no lien thereon and the relief sought by the United States was therefore denied.

The plaintiff and the United States of America appealed from the judgment entered in the Essex County Court to the Appellate Division of the Superior Court, and before the case was heard there we certified it on our own motion. R. R. 1:10–1(a).

We deal first with the appeal of the plaintiff Margaret B. Spagnuolo.

The pertinent statutory provisions relating to money seized in connection with an arrest for violation of a gambling law of this State are found in N. J. S. 2A:152–6 to 11, inclusive.

The trial court found that the $50,000 was not the property of the plaintiff but that of her son Edward, and with that finding of fact we are in entire accord. She had the burden of proof of overcoming the presumption of ownership in Edward by reason of his possession of the money. The possessor of personal property is *prima facie* the owner of it. *Bordine v. Combs*, 15 N. J. L. 412 (*Sup. Ct.* 1836); *City Bank of Bayonne v. O'Mara*, 88 N. J. L. 499 (*Sup. Ct.* 1916); *Redmond v. New Jersey Historical Society*, 132 N. J. Eq. 464 (*E. & A.* 1942).

We need not make a complete analysis of the testimony adduced on behalf of the plaintiff but content ourselves with the observation that the story relating to the hoarding of this large sum of money by the plaintiff and its transfer by her to her daughter-in-law in a paper bag without the amount of it being stated and without it being even counted by either Edward or his wife was wholly improbable, unbelievable and as stated below "implausible to the point of fantasy."

The evidence in the case comes largely from the mouths of the Spagnuolos but "testimony to be believed must not only proceed from the mouth of a credible witness but

must be credible in itself. It must be such as the common experience and observation of mankind can approve as probable in the circumstances * * *." *In re Perrone's Estate,* 5 *N. J.* 514, 521 (1950). When a finding of fact is amply supported by the evidence it will not be disturbed on appeal.

█ If the plaintiff was not the owner of the $50,000, as we hold, then she has no standing to complain that there was error below because it was not proven that the money in question was "earmarked and segregated as · part of a gambling operation." Edward, who was found to be the owner, alone could raise this issue and judgment by his own default had been entered against him. The question is therefore now moot. This likewise applies to the contention of the plaintiff that it was "the duty of the defendants to establish by a preponderance of the believable evidence that the money was segregated as an integral part of the gambling operation." Both of these questions were only material if the plaintiff was the owner of the money.

This brings us, then, to the problem of priority as between the County of Essex and the United States of America.

*Title* 26, *U. S. Code,* § 3670 (26 *U. S. C. A.* § 3670) reads as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

and section 3671 provides:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

Accordingly, the lien of the Federal Government became effective March 20, 1951, the date on which the assessment list was received ·by the Collector of Internal Revenue.

The money was seized by the Sheriff on March 2, 1951, 18 days prior to the effective date of the Government's lien.

The contention of the Government is that the County of Essex had nothing more than an inchoate lien or potential contingent property right in the money until the order of forfeiture which was dated May 5, 1954; that at most any right of the county to the money was purely contingent at least until June 20, 1951, the date of Spagnuolo's conviction.

The position of the county is that the money was contraband at the time of its seizure, prior to the effective date of the Government's lien, and that the judgment below merely declared a title in the county which had existed from the time of seizure.

An owner of property has no vested or constitutional right to use or allow the use of such property for purposes injurious to the public health or morals, and the State has the right in the exercise of its police power to provide for the seizure and destruction of property so used or intended to be used, without giving the custodian thereof notice or opportunity to be heard, and by authorizing it to be declared contraband. 47 *Am. Jur.*, sec. 51, *p.* 531.

Where the matter is regulated by statute the question is one of statutory intention. The seizure in this case was unquestionably made under *N. J. S.* 2A :152–6, formerly *R. S.* 2 :178–7 as amended by *L.* 1951, *c.* 174, which merely added a proviso authorizing the disposition of property seized to the state, county or federal institutions rather than merely destroying it.

The statute makes it unlawful to return any property so seized to the person or persons owning the same or to any other person. It is the clear intention of this section to call for an absolute seizure and immediate confiscation, together with a declaration that property so seized shall be considered contraband.

The seizure of money is justified where the crime charged is in violation of *R. S.* 2 :135–3, and where the money is earmarked and segregated as part of a gambling operation

it constitutes a gambling device and is contraband. *Kenny v. Wachenfeld,* 14 *N. J. Misc.* 322 *(Sup. Ct.* 1936); *Krug v. Board of Chosen Freeholders,* 3 *N. J. Super.* 22 *(App. Div.* 1949); *Farley v. Manning,* 4 *N. J.* 571 (1950); *State v. Link,* 14 *N. J.* 446, 452 (1954).

 It can be conceded that where an article is not inherently contraband but becomes so because of the use to which it is put, due process requires notice and opportunity to be heard before a forfeiture is effectuated. 12 *Am. Jur., sec.* 677, *p.* 358.

Where property is inherently dangerous to the public health and morals it may be declared contraband and destroyed under the sovereign power of the State, and the only question for review in a judicial proceeding is whether the officers making the seizure exceeded their authority under the applicable statute. But where property is not inherently dangerous to the public health and morals but becomes so because of the use to which it is put, due process requires notice and opportunity to be heard before the taking of the property as contraband results in an absolute forfeiture of all rights therein. The diversity of the various problems and the facades thereof and the forfeiture of rights in property declared by statute to be contraband are discussed in *Berry & Ackley v. DeMaris,* 76 *N. J. L.* 301, 307 *(Sup. Ct.* 1908); 12 *Am. Jur., sec.* 678, *p.* 358 *et seq.*

The argument of the United States in this case is predicated on certain language that was introduced into the law by *L.* 1941, *c.* 70, a supplement to the Criminal Procedure Act. Prior to its enactment it seems only one whose property was subjected to unreasonable search and seizure had an action to recover the property. See *State v. Condon,* 40 *N. J. L. J.* 293 *(O. & T.* 1917); *Zaft v. Milton,* 96 *N. J. Eq.* 576 *(Ch.* 1924); *Miller v. Atlantic City,* 111 *N. J. Eq.* 260 *(Ch.* 1932): *Kenny v. Wachenfeld, supra; Burgess v. Drewen,* 8 *N. J. Misc.* 179 *(Cir. Ct.* 1930).

 The supplement relates only to money seized and its purpose was to establish a proceeding by which a claim

of property could be asserted against monies seized in a gambling raid, and it permits the State to be sued on a claim of property by other persons not accused of the crime in which the property was seized. Section 2 of the act makes the county treasurer a custodial officer, not of money belonging to an individual but of money already seized and confiscated by the State, such custody being subject to the supervision of the prosecutor of the pleas of the county. The custody continues until the ultimate disposition of the charge or charges relating to the violation of the statutes on gambling. It then sets up alternative remedies by which the claim or claims of property may be asserted, depending upon whether the trial of the gambling charges results in a conviction or an acquittal.

The 1941 supplement must be construed *in pari materia* with the basic section of the act, *R. S.* 2:178-7, now *N. J. S.* 2A:152-6, to which it was a supplement. The basic section in effect declared that all property used for gambling was contraband, and such property was construed to include all money earmarked and segregated as part of a gambling operation.

It is true that the statute, as supplemented, declares that "said money, currency, or cash shall be deemed *prima facie* to be contraband of law as a gambling device, or as part of a gambling operation." This declaration of the statute was not and could not be intended to have the effect of leaving the legal title to such money in the gambler or player.

Money is the *sine qua non* of a gambling operation. To attempt to ascribe to the Legislature an intent to place money used in gambling in a different category for the purpose of seizure as contraband, from dice, roulette wheels, racing sheets, gambling tables, *etc.*, based on a theory or an academic question as to where legal title to such money rests at a given moment, is an absurdity which we shall not impute to the Legislature.

The intention of the Legislature in making such a declaration is obvious. It was and is to establish a rule of evidence,

by a *prima facie* presumption to be used in the trial of the claim of property created by the act. Such presumption places the burden upon the claimant of coming forward with evidence to overthrow it. Such a presumption is not required for the forfeiture of dice, roulette wheels, *etc.*, because such instruments of gambling speak louder than mere words. Further, for obvious reasons money cannot be destroyed and the State of New Jersey has not the constitutional power to destroy it. Such power is an incident of the federal power "to coin Money, [and] regulate the Value thereof, * * *." *Art.* I, *sec.* 8, *U. S. Const.; Ling Su Fan v. United States,* 218 *U. S.* 302, 31 *S. Ct.* 21, 54 *L. Ed.* 1049 (1910); 31 *U. S. C. A., sec.* 420, *et seq.*

The monies seized in this case are admittedly legal tender and the rule is that the taker, holder or finder, in good faith or by law, of money has a good title thereto against the whole world in the absence of proper and sufficient evidence to prove bad faith on his part. The County of Essex lawfully took possession of this contraband by virtue of the sovereign power of the State of New Jersey, and had good title to the money, from the date of the seizure to the confirming judgment of forfeiture, against the whole world including the owner, Edward Spagnuolo, against whom the United States asserts its lien.

In the trial below the owner, by his default, admitted that as far as his title and possession was concerned the money was contraband. The claimant, his mother, attempted to prove her title to the property and that the money was not used for gambling purposes. The trial court, on the proofs offered, declared the money to be contraband and entered the confirming judgment of forfeiture under the statute. He had no other alternative. Where a forfeiture is absolute under the statute, as it is here, the judgment of condemnation or forfeiture when entered relates back to the commission of the wrongful act and takes date from the wrongful acts, not from the date of sentence or decree. *United States v.* 1960 *Bags of Coffee,* 8 *Cranch.* 398, 3 *L. Ed.* 602

(1814) ; *In re Henderson's Distilled Spirits,* 14 *Wall.* 44, 81 *U. S.* 44, 20 *L. Ed.* 815 (1872) ; *United States v. Pacific Finance Corp.,* 110 *F.* 2d 732 (2d *Cir.* 1940), and the cases cited therein. *Cf. Motlow v. State of Missouri,* 295 *U. S.* 97, 55 *S. Ct.* 661, 79 *L. Ed.* 1327 (1935) ; 51 *Harv. L. Rev.* 1112.

 The established rule is that the forfeiture becomes absolute at the commission of the prohibited acts and the title from that moment vests in the state or government in all cases where the statute in terms denounces the forfeiture of the property as a penalty for a violation of the law, without giving any alternative remedy or providing any substitutes for forfeiture or allowing any exceptions to its enforcement, and that in all such cases it is not in the power of the offender or the former owner to defeat the forfeiture by any subsequent transfer of the property, even as to a *bona fide* purchaser for value, without notice of the wrongful acts done or committed by the former owner. The forfeiture is considered as directed against the thing itself, not merely the possessor's interest in it. *In re Henderson's Distilled Spirits, supra.*

 Therefore, we must conclude that at the time the jeopardy assessment was attempted to be levied against the particular monies in this case, seized under the circumstances in which they were, title to the property was then in the County of Essex. At most the federal lien could only attach to Edward Spagnuolo's inchoate right to sue for the return of the funds in the event of his acquittal and not to the confiscated funds themselves. The federal lien can rise no higher than the rights of the taxpayer. *Bankers Title & Abstract Co. v. Ferber Co.,* 15 *N. J.* 433, 441 (1954), and the authorities cited therein.

The title and possession of the County of Essex was not that of a creditor or a judgment creditor but a title and possession acquired by an exercise of sovereign power, and therefore the case of *United States v. Security Trust & Savings*

*Bank,* 340 *U. S.* 47, 71 *S. Ct.* 111, 95 *L. Ed.* 53 (1950), is not in point.

The case of *People of State of Illinois ex rel. Gordon v. Campbell,* 329 *U. S.* 362, 67 *S. Ct.* 340, 91 *L. Ed.* 348 (1946), involved the priority of state unemployment compensation liens and federal insurance contributions and unemployment compensation taxes, the taxpayer was insolvent, and the Federal Government's priority existed by the express provisions of 26 *U. S. C. A.,* § 3466, which provides for the priority of payment of debts due the United States in cases of insolvent debtors and is likewise not in point.

The judgment below is affirmed.

HEHER, J. (for modification). I would modify the judgment to sustain the lien for income taxes asserted by the United States.

*For affirmance*—Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For modification*—Justice HEHER—1.