**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles B. BLEASBY, Nelson F. Stamler, County of Bergen, and the Board of Chosen Freeholders of the County of Bergen, Defendants.**

**Civ. A. No. 494–56.**

United States District Court
D. New Jersey.
July 18, 1957.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Charles H. Hoens, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Milton T. Lasher, Hackensack, N. J., for defendants.

SMITH, District Judge.

This is a civil action in which the plaintiff seeks to enforce a federal tax lien

against certain funds which came into the possession and custody of the defendants under circumstances hereinafter outlined. The action is before the Court on a stipulation of facts. The question presented for determination is one of law, to wit, the relative priority of a federal tax lien and the statutory right acquired by the defendants, particularly the County of Bergen, under the laws of this State.

### Statutes

The claim of the plaintiff to a prior lien is predicated on the pertinent provision of Section 3670 of Title 26 U.S.C., 26 U.S.C.A. § 3670. This section reads as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 3671 of Title 26 U.S.C., 26 U.S.C.A. § 3671, which is also applicable, reads as follows:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

The right to the fund here asserted by the defendants, except Nelson F. Stamler, is predicated on the pertinent provisions of the New Jersey Statute, N.J.S.A. 2A: 152–7 to 2A:152–10, inclusive. These are quoted in the appendix hereto annexed.

### Facts

It appears from the stipulation of facts that prior to October 23, 1950 criminal proceedings against one Leo Link, alias J. W. Donaldson, the taxpayer, were instituted by the law enforcement officials of the County of Cumberland, where Link and others were charged by indictment with conspiracy to violate the gambling laws of the State, and particularly N.J.S.A. 2:135–3, now N.J.S.A. 2A:112–3. These proceedings were pending when, on October 23, 1950, certain law enforcement officials, under the supervision of the defendant Nelson F. Stamler, then a Deputy Attorney General, under the authority of a search warrant issued by the Honorable J. Wallace Leyden, a judge of the Superior Court, made a search of the residence of Link, located in Teaneck, Bergen County, New Jersey. While on the premises they discovered and seized currency in the amount of $127,000, the fund here in question. The seizure was made under the authority vested in the said officials by the pertinent provisions of the State law. See Appendix. The date of the seizure, to wit, October 23, 1950, is crucial because of the claim of the defendants, except Stamler, that their title in the fund became absolute upon its seizure.

Thereafter, criminal proceedings against Link were initiated in Bergen County, where he was charged by indictment with a violation of the gambling laws of the State, and particularly N.J.S.A. 2:135–3, now N.J.S.A. 2A:-112–3. The said indictment was returned by the Grand Jury on May 31, 1951. Link was arraigned in due course, and, on June 20, 1952, after the retraction of his former plea of "not guilty," entered a plea of "non vult" to the charges contained in the said indictment. A final judgment was entered by the Court on June 26, 1952, when Link was sentenced.

It should be noted that the fund theretofore held by Stamler was deposited by him with one A. Theodore Holmes, then the County Treasurer of Bergen County, on June 12, 1952, prior to Link's entry of his plea of "non vult." Thereafter, on June 18, 1952, the fund was lodged in a safe deposit box in the Peoples Trust Company of Bergen County, a bank selected by the Board of Chosen Freeholders. It should be noted further that the present County Treasurer of Bergen County is one Charles B. Bleasby, joined herein as a defendant.

Thereafter, on April 20, 1953, the criminal proceedings against Link having been concluded in the manner aforesaid, the said Holmes, acting in his capacity as County Treasurer, instituted a proceeding under the express provisions of the statute, N.J.S.A. 2A:152–9, in the Superior Court of New Jersey. The Director of Internal Revenue was joined as a party but he, represented by counsel, appeared specially and objected to the jurisdiction of the Court; thereafter he did not participate in the proceedings. A final order was entered in the proceedings on September 18, 1953; this order declared the fund contraband and directed its forfeiture to the County of Bergen. The judgment was affirmed by the Supreme Court of New Jersey, State v. Link, 14 N.J. 446, 102 A.2d 609. The judgment of forfeiture did not affect the rights of the plaintiff, and there is no contention here that it did.

The order entered in the Superior Court is not before this Court. However, a pertinent recital therein contained is quoted in the opinion of the Court in the case of State v. Link, supra, 102 A.2d at page 613. The recital reads as follows:

"The proof seems to indicate that if it is anybody's money it is Link's money, and it was money used either as the proceeds of or in connection with, set apart and segregated, as part of his gambling operations in this county, Cumberland County and Passaic County, and I think the conclusion is inevitable then that the money is forfeited to the sole use of the County of Bergen."

This factual determination that the seized fund had been the property of Link was sustained by the Supreme Court of New Jersey on the record before it. The judgment must therefore be regarded as determinative of the issue of ownership.

It should be noted that on June 24, 1952, prior to the initiation of proceedings by the County Treasurer, a civil action was commenced in the Superior Court of New Jersey by one Louise Schanals, who therein asserted ownership of the fund. This action was against the County Treasurer, apparently in his official capacity. The jury returned a verdict of "no cause for action," and upon this verdict a judgment in favor of the County Treasurer was entered. There were apparently no other claimants to the fund.

After the seizure of the fund on October 23, 1950, and before its ultimate forfeiture to the County of Bergen on September 18, 1953, the Commissioner of Internal Revenue initiated proceedings to perfect the federal tax lien established by Section 3670 of Title 26 U.S.C.A., supra. A jeopardy assessment for past due income taxes in the total sum of $175,228.06 was made against Link, the taxpayer, and filed with the Collector of Internal Revenue on October 27, 1950. The lien of the plaintiff was thus perfected and became effective as of that date. Section 3671, Title 26 U.S.C.A., supra. A notice thereof and demand for payment were duly served upon Link on the same date. Pursuant to the provisions of Section 3672 of Title 26 U.S.C.A., a "Notice of Federal Tax Lien" was duly filed in the office of the Register of Deeds, Bergen County, New Jersey, on October 27, 1950. A "Notice of Levy and Warrant of Distraint" was duly served upon the defendant Stamler on the same date.

Thereafter, on June 16, 1952, after the fund was deposited with the then County Treasurer, a "Notice of Levy and Warrant of Distraint" was served upon one Anthony Budin, Deputy County Treasurer of the County of Bergen. This was followed on June 24, 1952, by the service upon the said Budin of a final "Notice and Demand." This "Notice and Demand" was not honored and the forfeiture proceedings hereinabove referred to were thereafter instituted notwithstanding the said "Notice and Demand."

The plaintiff commenced an action in this court to enforce its federal tax lien on January 7, 1953. There were joined as defendants in the said action Leo Link, the taxpayer, his wife, Louise Schanals and A. Theodore Holmes, the County

Treasurer of Bergen County. This action was dismissed, except as to the defendant Leo Link. A final judgment was entered against Link on March 12, 1957. It was therein adjudged that he was indebted to the United States for past due taxes in the sum of $164,050.05, together with interest thereon in the amount of $55,981.38. It was further adjudged "that the United States has had at all times since October 27, 1950, valid and subsisting liens under Section 3670 of the 1939 Internal Revenue Code for the sum of $220,031.43 upon all property belonging to the defendant, Leo Link, or property in which he has an interest." The present action was commenced on June 26, 1956.

## Discussion

The relative priority of the federal tax lien and the statutory right acquired by the defendants must be determined under the general rule that "the first in time is the first in right." United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520.

The defendants here contend that they acquired absolute title to the fund upon its seizure by the law enforcement officials on October 23, 1950, approximately four days before the plaintiff perfected its lien. They rely primarily upon the case of Spagnuolo v. Bonnet, 16 N.J. 546, 109 A.2d 623, in which the Supreme Court of New Jersey, on facts similar to those in the present case, sustained, as between the federal tax lien and the statutory right of the county, the claim to priority there made by the county. It is therein held, 109 A.2d at page 630: "Where a forfeiture is absolute under the statute, as it is here, the judgment of condemnation or forfeiture when entered *relates back to the commission of the wrongful act and takes date from the wrongful acts,* not from the date of sentence or decree." (Emphasis by the Court.) We are of the opinion that this principle of construction is not applicable where, as here, it is invoked against a perfected federal tax lien.

We are, however, not bound by the cited decision. We must be guided in our determination of the issue of priority by the federal law as interpreted by our courts. It was held in the case of United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264: "The relative priority of the lien of the United States for unpaid taxes is, as we said in United States v. Waddill, Holland & Flinn, 323 U.S. 353, 356, 367, 65 S.Ct. 304, 306, 89 L.Ed. 294; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348; United States v. Security Trust & Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 112, 95 L.Ed. 53, always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court. United States v. Waddill, Holland & Flinn, 323 U.S. 353, at page 357, 65 S.Ct. 304, at page 306, 89 L.Ed. 294; United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071." We are required by this principle not only to construe the pertinent provisions of the state law upon which the defendants rely but also to determine what effect, if any, those laws have upon the priority of a federal tax lien.

There can be no doubt that under the pertinent provisions of the State law, see Appendix, the law enforcement officials have a right to seize as contraband "money, currency or cash" used in connection with a gambling operation. The title thereto, however, does not vest in the county upon mere seizure; in fact, it would appear from a mere reading of N.J.S.A. 2A:152-9 that the "money, currency or cash" must be held "in custody" by the county treasurer until after the prosecution of the accused has resulted in his conviction. The right of the county to forfeit the "money, currency or cash" is contingent upon the successful prosecution of the accused; the right of the county to the fund remains inchoate until a judgment of forfeiture is entered in the proceeding under the said section. The absolute title to the "money, cur-

rency or cash" vests in the county only upon the entry of such a judgment.

This conclusion is supported by the provisions of N.J.S.A. 2A:152–10. This section reserves to "the person * * * claiming to own the said money, currency or cash" a right to compel the return of the "money, currency or cash" upon the acquittal of the accused or other final termination of the criminal proceedings in his favor. It seems reasonably clear that under this section even the accused may compel return of the "money, currency or cash" upon the termination of the criminal proceedings in his favor.

■ The fund here in question was seized on October 23, 1950, but the judgment of forfeiture was not entered until September 18, 1953. The federal tax lien was perfected on October 27, 1950, subsequent to the seizure but prior to the entry of the said judgment. It follows that the claim to priority here asserted by the defendants may be sustained only upon adoption of the principle of construction adopted by the Supreme Court of New Jersey in the case of Spagnuolo v. Bonnet, supra, to wit, "the judgment of condemnation or forfeiture when entered *relates back to the commission of the wrongful act and takes date from the wrongful acts, not from the date of sentence or decree.*" (Emphasis by the Court).

The quoted principle was rejected by the Supreme Court of the United States in a line of cases in which the issue before the Court was the relative priority of the federal tax lien and the statutory lien established by local law. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Acri, supra; United States v. Liverpool and London Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271; see also: United States v. Kings County Iron Works, 2 Cir., 224 F.2d 232; Ersa, Inc., v. Dudley, 3 Cir., 234 F.2d 178. It was held in the cited cases: first, that the liens created

under the local laws remained inchoate until reduced to judgment or otherwise perfected; and second, that such an inchoate lien, although prior in time, would not be accorded priority over the federal tax lien. The lien created by local law is prior in right only if perfected before the federal tax lien attaches. Ibid.

We are of the opinion that the principle established by the cited cases is applicable here. The defendants are in no better position than a creditor who acquires an inchoate lien under local law. They acquired upon seizure of the fund nothing more than an inchoate right to forfeit it upon the successful termination of the criminal proceedings against the accused in whose possession it was found. An absolute right to the fund vested in them only upon the entry of the judgment of forfeiture, which was entered on September 18, 1953. However, even if we assume that they acquired an absolute right to the fund upon the successful termination of the criminal prosecution against Link, they are in no better position. The final judgment in the criminal case was not entered until June 26, 1952. The federal tax lien was perfected on October 27, 1950.

We are of the opinion that under the federal law the claim to priority here asserted by the plaintiff must be sustained for the reasons herein discussed.

### Action Against Stamler

We are of the opinion that the action against Nelson F. Stamler should be dismissed. While it is true that he was in possession of the fund on October 27, 1950, when served with a "Notice of Levy and Warrant of Distraint," there is no evidence that he was guilty of any fraud or misconduct which defeated the lien. He held the fund until June 12, 1952, when he deposited it with the then County Treasurer. This he was required to do under the express provisions of the statute, but we might observe that he should have done it sooner. The fund remained subject to the lien. We are of the opinion that under these circumstances judgment should be entered only

against the other defendants, who are still in custody and possession of the fund.

## Conclusions

### I.

The claim to priority here asserted by the plaintiff must be sustained, and it is therefore entitled to enforce its lien against the fund.

### II.

The parties shall prepare and submit to the Court an appropriate order for judgment.

## Appendix

The pertinent provisions of the New Jersey Statute, N.J.S.A. 2A:152–7 to 2A:152–10, inclusive, read as follows:

"Whenever any money, currency or cash shall be seized * * * by the police, * * * or other officer in connection with any arrest for a violation of or conspiracy to violate any gambling law of this state, the said money, currency or cash shall be deemed prima facie to be contraband of law as a gambling device, or as part of a gambling operation, and it shall be unlawful to return the said money, currency or cash to the person or persons claiming to own the same, or to any other person, except in the circumstances and manner hereinafter provided. (N.J.S.A. 2A:152–7).

"Pending trial or ultimate disposition of the charge or charges, indictment or indictments, growing out of any arrest in connection with which any such money, currency or cash was seized * *, the same shall be accounted for and deposited with the county treasurer of the county in which said arrest occurred, by and under the supervision of the prosecutor of the county. (N.J.S.A. 2A:152–8).

"If the trial or other ultimate disposition of such charge or charges, indictment or indictments result in a record of conviction being entered against the person or persons so arrested as aforesaid, in connection with which arrest the said money, currency or cash was seized * * *, as aforesaid, then the county treasurer may, after six months from the date of the record of the entry of such conviction, make application, without prior notice, to the county court for an order to show cause why such money, currency or cash so seized * * *, shall not be forfeited to the sole use and gain of the county; such order to show cause shall then be served upon the person from whom said money, currency or cash was so seized * * *, in accordance with the rules of practice and procedure. Upon the return of the said order, hearing shall be conducted in summary manner, and at such hearing proof of the conviction shall be prima facie evidence that the money, currency or cash so seized * * * was used in connection with the unlawful playing of any game wherein money or other thing of value is wagered or gambled; provided, however, that proof, to the satisfaction of the court, shall first be established that no action or proceeding, then pending and undetermined, has been filed in any court of competent jurisdiction against said county treasurer seeking a recovery or return of the money, currency or cash *SO held in custody*. (N.J. S.A. 2A:152–9). (Emphasis by the Court).

"If the trial or other ultimate disposition of such charge or charges, indictment or indictments, result in an acquittal or other final termination of such proceedings in favor of the person or persons so arrested, as aforesaid, in connection with which arrest the said money, currency or cash was seized * *, then the person or persons claiming to own the said money, currency or cash may within 2 years from the date of such acquittal or other final termination, in addition to any other remedy now provided by law, make application, on giving 10 days' prior notice thereof to the said county treasurer, to the county court of said county, for an order declaring such money, currency or cash to be the property of such person or persons, and ordering the same to be returned by the said county treasurer." (N.J.S.A. 2A:152–10).