86 N.J. Super. 296 (1965)
206 A.2d 773
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANN SHERRY, A/K/A ANN KREINER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1964.
Decided January 22, 1965.
*298 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Nelson G. Gross, County Counsel, attorney for appellant.
Mr. Norman Fischbein, attorney for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The County of Bergen appeals from a Law Division order granting defendant's application for the return of $2,719.50 alleged to have been illegally seized as a result of a search of her apartment, and directing the county treasurer, to whom the county prosecutor's office had paid the money, to remit that sum to her.
On January 23, 1961 a detective in the prosecutor's office applied to the county judge for a warrant authorizing a search of defendant's apartment. His affidavit stated that located therein was "certain property used as a means of committing a misdemeanor in violation of * * * 2A:87-1 Abortion." The facts supporting the application and tending to establish probable cause were given as "Confidential information received by the Prosecutor's Office." The record does not disclose the source of that information.
A warrant at once issued authorizing the detective or any police officer to enter and search the apartment and take into possession the following specifically described property: "Drugs, syringes, catheter tubes, various and sundry items for the purpose of committing an abortion."
Five members of the prosecutor's staff, one a woman, went to the apartment, opened the door without difficulty, and entered the living room. They immediately encountered defendant and placed her under arrest. The raiding party found a Miss Kitman lying on a couch in the next room and, after summoning a doctor to examine her, had her removed to a *299 hospital. They then searched the apartment. Their inventory of items taken lists a large number which clearly fall within the category of drugs and other equipment which might be used in performing an abortion. In addition, it lists as separate items $2,000 in $20 bills, $220 consisting of one $50, one $10 and eight $20 bills, a National State Bank of Newark bank book, and a safe deposit box key. Also taken were a typewriter, a jar of cough syrup, "Sundry Items" and "Assorted papers and Books" (not further described), as well as "1 Check in a mousetrap."
The money was found in several places in the apartment. In searching a small room apparently used by defendant as her office, one member of the search party noticed a tear in the upholstery backing of a couch, reached in and found an envelope containing $2,000 in $20 bills. The $220 was found in another, unspecified place. Members of the raiding party who testified on behalf of the county in opposition to defendant's application for the return of the money, did not state where the balance of the money was found, i.e., the difference between the $2,220 and the $2,719.50 to which defendant lays claim. The county has not contested the latter figure at any time.
It appears that just before the raid county detectives had had Miss Kitman's father under surveillance at a motel in the area. At the moment the raiding party entered defendant's apartment, these detectives were ordered to take Kitman into custody. He was brought to the prosecutor's office and interviewed there. Defendant, meanwhile, had also been brought there and was present during that part of the interview when Kitman stated that she had picked him up at the Newark Airport on Sunday, January 22 (the day before the raid), and he had given her $2,500 to abort his daughter. She had also given his daughter a pill which she was to take early the next morning. He said he had taken his daughter to defendant's apartment at noon on Monday. Defendant who, as noted, was already under arrest, did not comment on what Kitman told the prosecutor.
*300 The Bergen County grand jury returned two indictments, one charging defendant with abortion and the other with conspiracy to commit an abortion. She pleaded not guilty to the latter but then changed the plea to non vult. She was later sentenced to serve an indeterminate term at Clinton Reformatory and pay a fine of $1,000 at the rate of $50 a month. The abortion indictment was dismissed by the county judge at the time of this sentencing. Kitman, named as the person with whom defendant had unlawfully conspired to abort his daughter, apparently was never indicted. Nor was he produced to testify at the hearing on defendant's application for the return of her money. He has made no claim to $2,500 of the monies now held by the county treasurer.
When defendant's application first came up for hearing, the matter was put off at the county's request so that it might have an opportunity to examine her and submit testimony in support of its position. On the adjourned date the county presented the testimony of two of the detectives who were in the raiding party, and then rested.
The county now argues that defendant has not shown that the money seized was hers. The money was found in her apartment, and the apartment was in her possession and control. Possession of personal property is prima facie evidence of its ownership. The county had the burden of proof of overcoming the presumption of defendant's ownership. Spagnuolo v. Bonnet, 16 N.J. 546, 554 (1954); Redmond v. New Jersey Historical Society, 132 N.J. Eq. 464, 469 (E. & A. 1942). The county made no effort to do so.
The county's contention that the $2,719.50  or at least $2,500 of it  did not belong to defendant seems to be based on the argument that $2,500 did not effectively pass into her hands: it was the fruit of an illegal transaction. But there is no proof whatever that any of the money found in the apartment came from Kitman. Nowhere in the apartment did the raiding party find the specific sum of $2,500, segregated and earmarked so as to identify it as the sum paid by Kitman to defendant the previous day, after they had met at the airport. *301 Defendant's attorney was invited by the court to concede that $2,500 of the money seized represented the sum received from Kitman. He declined to do so. Kitman himself was not called by the county. The trial judge could not and did not find that the $2,500 was part of the money seized. The county's suggestion that the money was the fruit of an illegal transaction, contraband, and therefore subject to forfeiture, accordingly finds no support in the proofs. Cases like Spagnuolo v. Bonnet, above; Neiman v. Hurff, 11 N.J. 55 (1962), modifying 14 N.J. Super. 479 (Ch. Div. 1951), and Carr v. Hoy, 2 N.Y.2d 185, 158 N.Y.S.2d 572, 139 N.E.2d 531 (Ct. App. 1957), affirming 285 App. Div. 968, 138 N.Y.S.2d 682 (App. Div. 1955), remittitur amended 2 N.Y.2d 882, 161 N.Y.S.2d 137, 141 N.E.2d 623 (Ct. App. 1957), on which the county relies, are not apposite.
Spagnuolo involved the seizure of monies in the course of a gambling raid, a subject specifically dealt with by the Legislature in N.J.S. 2A:152-7 to 11. Money so seized is deemed prima facie to be contraband as a gambling device or as part of a gambling operation. Upon conviction of the person arrested, the county treasurer may, after six months from the entry of the conviction, apply to the County Court for an order to show cause why the money should not be forfeited to the sole use and gain of the county. The order is to be served upon the person from whom the money was taken, and upon the return of the order the court is to conduct a summary hearing at which proof of the conviction shall be prima facie evidence that the money seized was used in connection with a gambling operation. And see Pratico v. Rhodes, 17 N.J. 328 (1955).
Neiman was a case where a defendant murdered his wife. The court held that legal title to their residence, held by the entireties, as well as corporate stock jointly owned, did not vest in the husband on his wife's death, but he would hold the property in trust for the wife's beneficiary, subject to a lien thereon for the commuted value at the time of her death of the net income of half the property for the number of years *302 of his life expectancy, as determined by the mortality tables. To do otherwise would violate the common law policy that no one shall be allowed to profit by his own wrong.
In Carr v. Hoy, above, plaintiff had collected a fee of $10 each from a number of persons for the privilege of attending a farm outing and there photographing female models, some of whom posed in the nude. The sheriff appeared on the scene, arrested all concerned, and took from plaintiff and kept the money he had collected from his customers. Plaintiff pleaded guilty to a charge of outraging public decency, and paid a $50 fine. The other persons arrested pleaded guilty to disorderly conduct. The sheriff's refusal to return the admission monies resulted in plaintiff's bringing an action in trover. The trial court dismissed the complaint. Successive appeals to the Appellate Division and the Court of Appeals resulted in affirmances. The Court of Appeals said that it was settled law that a party to an illegal contract cannot ask a court to help him carry out his illegal object, nor can such a person plead or prove a case in which, as a basis for his claim, he must show his illegal purpose. The money which plaintiff sued for, said the court, was the fruit of an admitted crime and "no court should be required to serve as paymaster of the wages of crime." It made no difference that defendant had no title to the money; the court's concern was not with defendant's position but with the question of whether recovery by plaintiff should be denied for the sake of the public interest. The court then described the public policy involved in the language of the famous case of Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188, 5 L.R.A. 340 (Ct. App. 1889): "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." What was present in the Carr case, and absent here, is an identification of the money seized with the illegal arrangement entered into by Kitman and defendant, in the course of which he paid her $2,500.
*303 The raid on defendant's apartment was conducted before the coming down of the United States Supreme Court decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, on June 19, 1961. Defendant changed her plea to non vult on May 22, 1961 and was sentenced on October 5 following. She did not appeal, nor has she sought post-conviction relief on the basis of the Mapp case. Rather, she chose to serve out her term at Clinton Reformatory.
It should be noted, incidentally, that the search warrant would clearly have been invalid, for it was not based upon an affidavit containing the underlying facts and circumstances which led the detective who applied for the warrant to believe that the particular items described were located in the apartment to be searched. The bare statement, "Confidential information received by the Prosecutor's Office," provided no valid basis for a showing of probable cause. See State v. Macri, 39 N.J. 250 (1963). Defendant's arrest lent no validity to the search. The testimony of one of the detectives was that he confronted defendant immediately upon entering the apartment, told her she was under arrest, and she was to sit down in the living room and not move. Meanwhile, other members of the raiding party went into the next room and found Miss Kitman lying on the couch. The search then followed. It will be seen that there was no probable cause for the arrest at the moment it was effected, so that the arrest will not support the results of the search. Cf. State v. Doyle, 42 N.J. 334, 342 et seq. (1964).
The present proceeding for an order directing the return of the $2,719.50, though brought on by a motion captioned in the criminal cause of State v. Sherry, was in fact a civil proceeding in the nature of replevin. Although the validity of a search warrant in criminal proceedings is not here in question, it is appropriate to note  in this civil setting  that the warrant merely authorized the law enforcement authorities to enter and search the apartment, and to take into their possession items specifically described as "Drugs, syringes, catheter tubes, various and sundry items for the purpose of *304 committing an abortion"  nothing more. There was no authority to search for and seize money, not to speak of the typewriter, the assorted papers and books or, indeed, "1 Check in a mousetrap." Just how these could be used "for the purpose of committing an abortion" escapes all imagination.
N.J.S. 2A:152-2 provides that
"No conviction or judgment for any offense against this state, shall make or work corruption of blood, disinherison of heirs, loss of dower, or forfeiture of estate. * * *"
The county refers us to no statute which would permit the seizure and forfeiture here involved. The Legislature has provided for seizure and forfeiture in specific instances, for example: N.J.S. 2A:130-4 (any chattels, liquors or other personal property found in a building or place and possessed, used or intended to be used to maintain a nuisance); N.J.S. 2A:152-5 (obscene and indecent books, papers, pictures, articles or things); N.J.S. 2A:152-6 (gaming apparatus) and N.J.S. 2A:152-7 (money seized in connection with an arrest for violating or conspiracy to violate the gambling laws); N.J.S.A. 23:3-42 (certain fish pound nets set in the Atlantic Ocean); N.J.S.A. 23:5-24.7 (nets, boats or other apparatus used by non-residents in any of the waters of this State); N.J.S.A. 23:10-21 (any fishing apparatus used in violation of Title 23, "Fish and Game, Wild Birds and Animals"); R.S. 24:3-10 (milk or cream found in violation of Title 24, subtitle 1, "Food and Drugs"); N.J.S.A. 24:4-9 (any food, drug, cosmetic or device, not in interstate transit, offered or intended for sale in violation of Title 24, subtitle 1, "Food and Drugs"); R.S. 24:4-11 (condemned food of perishable nature); R.S. 24:18-38 (narcotic drugs unlawfully possessed) and N.J.S.A. 24:18-38.1 to 38.3 (vehicle, boat or aircraft used in violation of the Uniform Narcotics Drug Law, R.S. 24:18-1 et seq., as amended); N.J.S.A. 33:1-66 (property used in unlawful alcoholic beverage activity, including any vehicle in which illicit alcoholic beverages are found); *305 R.S. 33:2-5 (unregistered stills and distilling apparatus), and N.J.S.A. 50:5-17 (vessel or vehicle used in violation of any of the provisions of Title 50, "Shellfish," including all tongs, dredges, tackle, furniture and appurtenances thereunto belonging).
In short, unless any item which the law enforcement officers took from defendant's apartment can be shown to be an instrumentality used in connection with the crime charged, contraband, or the fruits of an illegal transaction, we must look to statutory authority to validate any forfeiture. The county does not claim that the money here involved was an instrumentality of the crime. They suggest it was contraband and argue that it was the fruit of an illegal transaction. However, we have determined that there is no proof to sustain this contention. We find no statute which would authorize the forfeiture of the $2,719.50, or any part of it. Cf. Harawitz v. Murray, 123 Misc. 301, 205 N.Y.S. 230 (Sup. Ct. 1924).
It is suggested that there should have been a plenary proceeding to determine plaintiff's right to the money seized. True, the matter was initiated by motion and affidavit, returnable February 7, 1964. As noted, counsel requested that the matter be postponed so that the county might submit testimony in support of its position. The matter went over to May 29, 1964, at which time there was a full hearing. The county then had the opportunity to submit such testimony as it desired to overcome the presumption of plaintiff's ownership of the money based on the fact that it was found in her apartment, and to establish that the $2,500 Kitman paid was part of the money seized. It chose to rest its case  and unsuccessfully so  on the testimony of two county detectives and that part of Kitman's statement made in plaintiff's presence.
Accordingly, the order under appeal is affirmed.
SULLIVAN, J.A.D. (dissenting).
I disagree with the majority opinion which holds that the claimant (defendant), is entitled to have the money seized by the police turned over to her. The rationale of the majority opinion is that "absent *306 here, is an identification of the money seized with the illegal arrangement entered into by Kitman and defendant, in the course of which he paid her $2,500."
First of all I question the informality of the procedure employed by claimant; that of merely serving and filing a notice of motion for a return of the money on the ground that it was illegally seized. Presumably the motion was based on R.R. 3:2A-6. However, in my opinion the rule is inapplicable to the present case. Under the rule a person who has reasonable grounds to believe that illegally seized evidence may be used against him in a penal proceeding, may apply for a return of the property to prevent its being used in evidence against him. The present application just does not fall within the rule. My brethren state that the present proceeding is in fact a civil proceeding in the nature of replevin. I agree that there should have been a plenary proceeding, but such was not the case, and the application was heard and disposed of in a summary manner.
Of greater importance is the fact that the trial judge, without actually deciding whether or not any part of the money represented the fee paid by Kitman, ordered it returned to the claimant. The judge ruled that there was no legal justification for refusing to grant the motion even though the money included the fee paid by Kitman: "You can almost concede that." In so ruling the trial judge erred, since it is settled law, as the majority opinion points out, that if the money in question was the fruit of a crime "`no court should be required to serve as paymaster of the wages of crime.'" Carr v. Hoy, 2 N.Y.2d 185, 187, 158 N.Y.S.2d 572, 574, 139 N.E.2d 531 (Ct. App. 1957). In that case the Court of Appeals of New York stated that the refusal to return money representing the "fruit of a crime" to the person from whom it had been seized by the police was based on principles dictated by public policy and having their foundation in universal law administered in all civilized countries. The court held that such was not a forfeiture, nor the validating of the seizure of a person's property without warrant of law, since *307 the money was not being awarded to the sheriff, but rather the courts were being closed "to one who would prove his own wrongdoing as a basis for his supposed `rights.'" Carr, supra, 2 N.Y.2d, at p. 188, 158 N.Y.S.2d, at p. 575, 139 N.E.2d, at p. 533.
I would remand the matter for a plenary hearing on the issue of whether or not any part of the money represented the fee paid by Kitman. The State should have the opportunity to avail itself of discovery prior to the hearing. The claimant should be required to state whether or not any part of the money in question represents the fee alleged to have been paid by Kitman. I see no jeopardy to her. She has already pleaded non vult to the charge of conspiracy to commit an abortion. If the fact finder determines that any part of the money represents the fee paid, recovery of such money should be denied.
Also I think we should not say, as the majority opinion does, that defendant's arrest was illegal so that the subsequent search was invalid.
The legality of the arrest was never inquired into at the hearing. However, there was some disclosure that the police had information that defendant was performing abortions in her apartment. Apparently there was surveillance which supported the information. It might well be that the facts, if developed, would bring the case within the rationale of State v. Doyle, 42 N.J. 334 (1964), an abortion case, where an arrest without a warrant but based on hearsay information and surveillance was upheld and the subsequent search held to be valid.
I would reverse and remand.