181 N.J. Super. 549 (1981)
438 A.2d 581
STATE OF NEW JERSEY, PLAINTIFF,
v.
ELLISON JONES & ONE 1981 CADILLAC FLEETWOOD BROUGHAM FOUR DOOR BLACK AUTOMOBILE N.J. REGISTRATION 845PDN, SERIAL NO. 1G6AB6994B9145207, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided October 2, 1981.
*552 James E. Flynn, First Assistant Prosecutor, for plaintiff (Harold J. Ruvoldt, Jr., Hudson County Prosecutor, attorney).
Nicholas E. Caprio for defendants (Harkavy, Goldman, Goldman, Caprio & Levy, P.A., attorneys).
O'BRIEN, A.J.S.C.
This is a forfeiture action instituted pursuant to N.J.S.A. 2C:64-3. Defendants have filed a motion to dismiss the complaint or, in the alternative, granting summary judgment and ordering the return of the subject vehicle.
Plaintiff has moved for an order permitting use of the vehicle pending disposition of the forfeiture action pursuant to N.J.S.A. 2C:64-3(h).
In the course of monitoring a court-authorized wiretap on one Aldo's telephone, a call was intercepted to defendant Jones' telephone on March 3, 1981. On March 7, 9, 11 and 14, 1981 additional calls were intercepted which contained allegedly drug-related conversations.
As a result of the last conversation on March 14, at 8:55 a.m., Aldo's residence in West New York was placed under surveillance. At 11:00 a.m. on that day a person was observed leaving the residence and entering the Cadillac automobile which is the subject of this action and is fully described in the caption. Based upon the intercepted phone conversations between Aldo and Jones and the surveillance, an investigator has expressed the view in affidavit form that this vehicle was being used in a narcotics distribution network.
On March 18, 1981, pursuant to a warrant issued by a judge of the Superior Court, a search was conducted of the residence of defendant Ellison Jones in Hackensack, New Jersey, which disclosed a tinfoil packet of cocaine, among other things. A simultaneous raid was conducted on the Aldo residence in West *553 New York, uncovering 1.68 pounds of cocaine and 1.8 pounds of marijuana. Following the search of the Jones residence, investigators from the Hudson County Prosecutor's Office seized the subject Cadillac automobile. An affidavit submitted upon application for the search warrant stated that defendant Jones "has been arrested numerous times for drug related offenses." The warrants issued were for the person, premises and motor vehicle of Aldo, but only for the person and premises of Jones.
Although the vehicle was actually seized on March 18, 1981, an order was entered on April 14, 1981 by the Superior Court authorizing the Hudson County Prosecutor to seize the subject vehicle "pursuant to N.J.S. 2C:64-1 et seq. and subject to the requirements of N.J.S. 2C:64-3." This order was based upon an affidavit by a prosecutor's investigator reciting the history of the intercepted telephone calls, issuance of search warrants, and actual search of the premises, culminating with the seizure of the vehicle on March 18, 1981.
On April 20, 1981 the complaint in this action was filed.
Defendant first argues that the forfeiture action was not "instituted within 30 days of the seizure," as required by N.J.S.A. 2C:64-3(a) (now 90 days as amended by L. 1981, c. 290). He argues that more than 30 days elapsed between the seizure on March 18 and the filing of the complaint on April 20. Thus it is asserted that the complaint should be dismissed. The simple answer to this argument is that the complaint was filed within the time period permitted by the statute, as computed pursuant to R.R. 1:3-1. The last day of the period computed in accordance with the rule was April 17, 1981, which was Good Friday, a legal holiday. This was, of course, followed by Saturday and Sunday and thus the complaint was properly filed on Monday, April 20, 1981. Defendants' motion to dismiss the complaint on the ground that it was not timely filed is denied.
Defendants' next ground for dismissal or summary judgment has more substance. It is contended that the vehicle was seized illegally on March 18, 1981. Prosecutor's detectives had no warrant to search or seize the vehicle in question, but only the *554 premises and person of defendant Jones. Thus, on that date there was no "process issued by any court of competent jurisdiction" authorizing the seizure, as required by N.J.S.A. 2C:64-1(b). Such an order was issued by the Superior Court on April 14, 1981.
The question thus presented is whether the fact that the car had previously been seized, perhaps illegally, before the authority for such seizure by a court of competent jurisdiction was obtained is fatally defective to the maintenance of this forfeiture action.
In resolving this question it is important to understand that the exclusionary rule concerning illegally seized evidence is not directly involved. It is true that the United States Supreme Court in One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), held that the fact of illegal use of a vehicle to sustain a forfeiture action may not be proved by evidence obtained in violation of the Fourth Amendment, such as by contraband found in the vehicle. However, application of the exclusionary rule in that setting does not preclude proof to support a forfeiture by other evidence not illegally obtained. Thus, initial illegal seizure is not per se fatal to the maintenance of a forfeiture action.
It appears in this case that the prosecutor may have concluded that the initial seizure was questionable. Perhaps that is why he procured the April 14, 1981 order specifically authorizing seizure of the vehicle prior to the institution of this forfeiture action on April 20, 1981. Defendants do not question the validity of that order as appropriate process to authorize the seizure under N.J.S.A. 2C:64-1(b). Rather, defendants argue that at the time of the issuance of that order the vehicle had already been seized and was indeed in the possession of the prosecutor, a fact which had been disclosed to the court in the affidavit filed in support of the application for the seizure order of April 14, 1981.
While there is surface appeal to this argument, it cannot withstand analysis. If the prosecutor was endeavoring to use *555 the April 14 order as the date of seizure, rather than March 18, to support a timely filing of the complaint, perhaps the argument would have merit. However, as stated above, the action was filed timely computing the time from the date of the actual seizure on March 18.
Although it may be argued that the prosecutor should have returned the vehicle to defendant as having been illegally seized and then reseized it pursuant to the April 14 order, the result would be the same, i.e., prosecutor would have possession of the vehicle pursuant to process issued by a court of competent jurisdiction.
This point was made by Mr. Justice Holmes in Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926), wherein, quoting Justice Story in The Caledonian, 4 Wheat. 100, 4 L.Ed. 523 he stated:
That anyone may seize any property for a forfeiture to the Government and that if the Government adopts the act and proceeds to enforce the forfeiture by legal process, this is of no less validity than when the seizure is by authority originally given. The statement is repeated by the same judge in Wood v. United States, 16 Pet. 342, 359 [10 L.Ed. 987] and Taylor v. United States, 3 How. 197 [11 L.Ed. 559]. See also Gelston v. Hoyt, 3 Wheat. 246, 310 [4 L.Ed. 381]. The owner of the property suffers nothing that he would not have suffered if the seizure had been authorized. However effected, it brings the object within the power of the Court which is an end that the law seeks to attain and justice to the owner is as safe in the one case as in the other. The jurisdiction of the court was secured by the fact that the res was in the possession of the prohibition director when the libel was filed.
Ordinarily, an order authorizing seizure should precede the actual seizure. However, when the vehicle has been seized and held illegally, upon procurement of an order authorizing such seizure the illegal retention of the vehicle would end and at that point the vehicle would be legally held.
Any attempt to distinguish between prima facie (per se) and derivative contraband in arguing for the return of illegally seized derivative contraband before it may be lawfully seized was dealt with by the 9th Circuit in United States v. One 1971 Harley-Davidson Motorcycle, 508 F.2d 351 (1974), where the court said:

*556 Nor do we believe we should adopt such a rule as an exercise of our supervisory powers. First, although courts will adjust their remedies to protect Federally protected rights (Bivins v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 392, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Congress has specifically provided for forfeiture of a vehicle used in violation of 49 U.S.C. § 781. That the motorcycle was so used is undisputed and independently proved. Second, returning property based upon a distinction between per se and derivative contraband would be unmanageable and in many cases arbitrary. The Bacall [Imports, LTD v. United States, 412 F.2d 586 (9th Cir.1969)] case is a good example. The fabric was not inherently illegal  possession was illegal only because of the way in which it was imported. 18 U.S.C. § 545. Similarly here, the motorcycle was not inherently illegal  the vice was in the way it was used. Moreover, the deterrent value of such a rule would be minimal. Because the evidence to prove the forfeiture was procured independently of the illegal search, contraband seized in violation of the possessor's Fourth Amendment rights could be returned only to be seized again with a warrant.
This is precisely what would occur in this case. The Cadillac could have been returned only to be seized again under the April 14, 1981 order.
Our Supreme Court has discussed this question in Farley v. $168,400.97, 55 N.J. 31 (1969), wherein the court said:
If in One 1958 Plymouth Sedan [v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170] the court meant that the illegal seizure of the automobile operated to prevent or undo the forfeiture, a simple statement to that effect would have disposed of the matter ... Far from saying that a forfeited article which is not per se contraband must be returned because it was illegally seized even though the forfeiture can be shown by other untainted proof, the court expressly pointed out that Pennsylvania had no other evidence to show the illegal use of the vehicle ... Hence we remain of the view that One 1958 Plymouth Sedan does not hold that the State or the United States is deprived of property which was forfeited to it if it acquired possession of that property by a search and seizure proscribed by the Fourth Amendment.
Nor will we on our own adopt the rule urged upon us. The Fourth Amendment does not call for the suppression or return of things obtained in violation of its terms. The exclusionary rule was judge-made upon the belief that no other sanction could deter insolence in office.... We see no reason to go beyond that rule and to forfeit what is the State's property because of the manner whereby it obtained possession. [at 48; citation omitted.)
In the Farley case Chief Justice Weintraub fully explored the forfeiture concept and concluded that
... when a statute provides for a forfeiture, the forfeiture takes place upon the occurrence of the forbidden act or omission unless the statute provides otherwise, and the sovereign's title is in no sense inchoate because procedural due process requires an opportunity to dispute the claim of forfeiture in a judicial proceeding. [at 40]
*557 Our statute not only does not provide otherwise, but rather provides specifically that
Title to property forfeited under this Chapter shall have vested in the entity funding the prosecuting agency involved at the time the item was utilized illegally.... [N.J.S.A. 2C:64-7.]
Thus, if the subject Cadillac was used illegally in a narcotics distribution network on March 14, 1981, as alleged in the affidavit supporting the application for the April 14, 1981 order authorizing seizure, then title to that vehicle vested in the County of Hudson on that date. This, of course, preceded the date of actual seizure (albeit illegal) on March 18, 1981. If this allegation is proven at the summary hearing and forfeiture is granted, it becomes a "confirming judgment of forfeiture." Spagnuolo v. Bonnet, 16 N.J. 546, 559 (1954).
Return of the vehicle in this case to defendant Jones, as having been illegally seized, and sale by him to a bona fide purchaser for value without notice of the illegal use of said vehicle, would create the very problem discussed in Spagnuolo and Farley. Proof of the illegal use of the vehicle resulting in a judgment of forfeiture would "confirm" title to the vehicle in the county as of the date of the illegal use. Yet, Jones could not defeat that forfeiture by the subsequent transfer of the property to a bona fide purchaser for value in the intervening period between return and reseizing under the order authorizing seizure. The courts have refused to accept the contention urged by defendants either judicially or administratively. It has the potential to create other possessory interests without any corresponding benefit to the owner of the vehicle. What would be the result if a security interest were perfected during the intervening period in light of the language of the amendment to N.J.S. 2C:64-5?
For all of the foregoing reasons, defendant's motion to dismiss the complaint, or in the alternative for summary judgment and for the return of the vehicle, is denied.
Plaintiff has moved for an order permitting it to use the seized automobile pending disposition of the forfeiture action. *558 Such use is sanctioned by the Legislature in N.J.S.A. 2C:64-3(h), which provides that approval shall be liberally granted upon the conditions stated. There appears to be no reason why such approval should not be given in this case. Accordingly, an order permitting such use may be submitted conditioned upon the requirements of the statute. The market value of the vehicle shall be its value on March 18, 1981. The bond or written guarantee shall be in appropriate form.
Defendant asserts as undisputed that there is a large lien on the vehicle, which financial obligation was incurred at the time the motor vehicle was purchased. His attorney argues, "It is patently unfair to allow the State of New Jersey to possess and use a motor vehicle which my client must pay for and insure ...."
Rights of any holder of a perfected security interest in this vehicle are not affected by the court's decision nor by an ultimate confirming judgment of forfeiture, unless proofs are adduced by the requisite burden that the holder of such security interest had knowledge of, or consented to, the illegal use of such vehicle. N.J.S.A. 2C:64-5 (made clearer by recent amendment, L. 1981, c. 290).
The unfairness asserted by defendants in having the county possess the vehicle upon which Jones is making payments was discussed by the Appellate Division in State v. One 1976 Pontiac Firebird, 168 N.J. Super. 168 (App.Div. 1979). That case dealt with the forfeiture provisions of the Controlled Dangerous Substance Act formerly contained in N.J.S.A. 24:21-35(b) through (f), which were deleted by L. 1979, c. 344, § 9, because such forfeiture proceedings are now covered by N.J.S.A. 2C:64-1 et seq. At the same time the Legislature in § 5 of the same chapter amended N.J.S. 2C:64-5 to add the following language: "Such rights are only to the extent of interest in the seized property and at the option of the entity funding the prosecuting agency involved may be extinguished by appropriate payment."
It therefore appears that the Legislature has adopted the reasoning of the Appellate Division in One 1976 Pontiac Firebird, *559 where the court concluded (at 176): "The State may either opt to pay off the lien and keep the vehicle pending final judgment of forfeiture or surrender the vehicle to the lien holder." The court fully explained its reasoning and no purpose would be served in repeating it here.
This court therefore concludes that if Jones elects not to continue payments to the party holding the security interest, it is the right of that party to take possession of the collateral upon such default and sell it in a commercially reasonable manner. N.J.S.A. 12A:9-503, 504. At that point the county may either opt to pay off the lien and keep the vehicle pending final judgment of forfeiture or surrender the vehicle to the lien holder.
Neither party has addressed itself to these questions. Any issues created by the existence of a security interest can be resolved at the summary hearing which will be scheduled promptly.
An order may be submitted embodying the determinations set forth in this opinion, which shall provide space for fixing the date for summary hearing. Both parties are directed to submit briefs on the security interest question within ten days from the date of signing of said order.