216 N.J. Super. 716 (1987)
524 A.2d 893
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SOMERSET CENTRAL CORPORATION; T. JEROME MADISON; ONE 1976 NOVA WELLCRAFT CRUISER, NEW JERSEY REGISTRATION NJ-2364CZ AND NJ-6389CZ, SERIAL NO. WELLA 1744F76E, AND STEVEN THIEL, DEFENDANTS-RESPONDENTS, and DOMINICK J. NUCIFORA; DANIEL CHANSKY; JOSEPH ZACCARO; ARROW STABLE SALES; ROBERT FROEHLICH; AND RELIANCE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1987.
Decided April 13, 1987.
*717 Before Judges KING, DEIGHAN and HAVEY.
Paul J. Feldman, Assistant Prosecutor, argued the cause for appellant (John A. Kaye, Monmouth County Prosecutor, attorney; Mark P. Stalford, Assistant Prosecutor, of counsel).
Ridley M. Whitaker argued the cause for respondents T. Jerome Madison and Somerset Central Corporation (Wills & O'Neill, attorneys; Ridley M. Whitaker and John P. Marcos, on the brief).
No brief filed on behalf of respondent Steven Thiel, pro se.
The opinion of the court was delivered by KING, P.J.A.D.
This appeal is taken from a judgment denying forfeiture of a Nova Wellcraft pleasure vessel owned by a bona fide or innocent *718 purchaser for value, T. Jerome Madison. We agree with the judgment and affirm.
The case was decided on the following stipulation of facts.
"1. Dominick Nucifora purchased the 1976 Nova Wellcraft boat in 1977 for $7,000 from a private party in Toms River, New Jersey.
2. This boat was covered for hull loss by the Reliance Insurance Company.
3. During the summer of 1980 Dominick Nucifora agreed with one Daniel Chanski to report the boat lost at sea to the U.S. Coast Guard and the Reliance Insurance Company.
4. On October 19, 1980 Dominick Nucifora did, in fact, report the boat lost at sea to the U.S. Coast Guard and the Reliance Insurance Company.
5. In January, 1981, Dominick Nucifora received a check in the amount of $12,000 from the Reliance Insurance Company as proceeds for the loss of the boat.
6. Within the month of January 1981 Dominick Nucifora purchased another boat with the insurance proceeds. This boat was in turn sold in order to buy another boat for $10,000 which again was sold to buy a family-type boat for $14,500. This last boat was sold for $14,000 cash and the money used to pay off the $6,000 balance on the loan used to buy it and the remainder of the cash was used for personal expenses of Dominick Nucifora.
7. The 1976 Nova Wellcraft was given to Daniel Chanski for no cash. He sold it under the name of Arrow Stable Sales to Steven Thiel who sold it to Robert Froehlich who ultimately sold it to Jerome Madison on June 7, 1983 who registered it under the name of Somerset Central Corporation. Proofs of purchase are to be forwarded by Madison and consist of a copy of the front of a check to Froehlich and a bill of sale.
8. The State alleges and, for purposes of this argument, the defendants Madison and Somerset Central Corporation accept that the boat was seized by the Monmouth County Prosecutor's Office on April 2, 1984 in Bricktown, New Jersey. The investigative report of the seizure is attached hereto.
9. The State's forfeiture complaint was filed within 90 days of seizure on June 29, 1984.
10. The boat remains in the custody of the State since seizure and to the present.
11. On February 17, 1984, Dominick Nucifora was sentenced, after a plea of guilty to the theft by deception of the $12,000 from the Reliance Insurance Company under N.J.S.A. 2C:20-4, a third degree crime, to six months in the Monmouth County Correctional Institute and a 1 1/2 year probation term which was terminated on November, 1985.
12. It is agreed by the State that Madison and Somerset Central Corporation played no part in, nor had any knowledge of, the theft by deception from the Reliance Insurance Company regarding the boat.
13. The parties agree that the instant action concerns whether the boat is forfeit to the State or not. Issues such as damages suffered by either party or *719 disposition of the boat if forfeiture is denied will be the subject of further proceedings, as requested, after forfeiture disposition."
The issue is whether property acquired by a bona fide or innocent purchaser for value after it was the subject of an insurance fraud is subject to forfeiture under N.J.S.A. 2C:64-4 to 64-8. The controlling section of our forfeiture statute, N.J.S.A. 2C:64-1a(2) states in pertinent part.
a. Any interest in the following shall be subject to forfeiture and no property right shall exist in them;
* * * * * * * *
(2) All property which has been ... utilized in furtherance of an unlawful activity, including but not limited to, conveyances intended to facilitate the perpetration of illegal acts ...
The language of the statute on its face could be interpreted to permit a forfeiture in this case. However, the New Jersey Supreme Court has held that the statute, if read too literally, could well support an unconstitutional taking without compensation under the 5th Amendment of the U.S. Constitution and Article 1, paragraph 20 of the New Jersey Constitution. "If read literally the statute would be constitutionally infirm, its reach extending not only to the property of individuals, but also that of innocent owners who did all they reasonably could to prevent misuse of their property." State v. 1979 Pontiac Trans Am, 98 N.J. 474, 482 (1985). In that case, the State tried to forfeit an automobile owned by a man who had lent it to his son and which the son had used to transport stolen property. The Court held that N.J.S.A. 2C:64-1 and 5 must be read "to exclude innocent owners who did not consent to or know of the illegal use of their property and who did all that reasonably could be expected to prevent that use," id. at 485. The issue in 1979 Trans Am was somewhat different than the issue in the case before us, but the holding there readily suggests the result we here reach.
The specific question in this case, whether or not there could be a forfeiture against a bona fide or innocent purchaser for value, initially was answered in Kutner Buick, Inc. v. Strelecki, *720 111 N.J. Super. 89 (Ch. Div. 1970), decided, of course, prior to 1979 Trans Am. In Kutner the Chancery Division allowed forfeiture, under a different statute, of a stolen vehicle which had been sold to a series of bona fide purchasers. The court in Kutner based its holding on the principle that "confiscations have been held valid against the true owner even when he was ignorant of its use for illegal purposes, on the reasoning that the property was the offender and the culpability of the owner was not in question." Id. at 100. This general principle to our mind has been specifically moderated by the Supreme Court in 1979 Trans Am as to innocent owners of property, at least where it has not been stolen. See also N.J.S.A. 2C:64-5 protecting innocent lessors and lien holders. Examples of similar holdings in other jurisdictions include State v. Shimits, 10 Ohio St.3d 83, 461 N.E.2d 1278 (Sup.Ct. 1984); State v. Rice, 626 P.2d 104 (Alaska Sup.Ct. 1981); Dale Wegner Chevrolet, Inc. v. Commonwealth, 213 Va. 337, 192 S.E.2d 750 (1972); State v. One 1984 Toyota Truck, 69 Md. App. 235, 517 A.2d 103 (1986); Metropolitan Dade County v. Garcia, 375 So.2d 45 (Fla.Ct.App. 1979).
1979 Pontiac Trans Am clearly states that the forfeiture statutes must be read to exempt "innocent owners," 98 N.J. at 474, and applies only "to owners who use their property for criminal purposes and to those who knowingly allow others to use their property for such purposes." Id. at 488. The statute may also apply "to innocent owners who do not use due care to prevent the unlawful use of their property by third parties." Ibid. None of these circumstances apply here. See also State v. One 1976 Pontiac Firebird, 168 N.J. Super. 168, 175 (App. Div. 1979).
We also reject the State's contention that title could not have passed to Madison because of Nucifora's fraud on Reliance Insurance Company. We doubt if the chain of legal title was ever disturbed; the criminal act was a fraudulent insurance claim followed by the conversion of the proceeds of the fraud, the money. The vessel itself was never the subject of a theft *721 or used for a criminal purpose. Moreover, to turn the result in this case on notions of "title" would produce an unconstitutional interpretation of the statute and a commercially undesirable policy result. See discussion in Wiseman, "The Limits of Vision: Karl Llewellyn and the Merchant Rules," 100 Harv. L.Rev. 465, 476-477 (1987); White & Summers, Uniform Commercial Code, § 5-1 at 134-137 (1972).
In 1979 Trans Am the Court remanded the case to determine if the son was really the beneficial owner of the car or whether the father, if owner, had any knowledge of the illicit use of the car and exercised due care to prevent that use. 98 N.J. at 488. The State in this case stipulated that Madison and his corporation "played no part in, nor had any knowledge of, the theft by deception from the Reliance Insurance Company regarding the boat." Therefore a remand to determine the owner's state of mind is unnecessary.
Affirmed.