**UNITED STATES of America**

v.

**1977 PORSCHE CARRERA 911 VIN 9117201924 LICENSE NO. 459 DWR**

Civ. No. A–89–CA–940.

United States District Court, W.D. Texas, Austin Division.

Oct. 23, 1990.

Katherine L. Smith, Asst. U.S. Atty., Austin, Tex., for plaintiff.

Terrence W. Kirk, Austin, Tex., for claimant.

## ORDER

NOWLIN, District Judge.

Before the Court is the Government's Verified Complaint for Forfeiture, which is based on the claim that the Respondent Porsche Carrera 911 ("Respondent") was used to facilitate the distribution of 3,4–me-

thylene–dioxymethamphetamine, otherwise known as "ecstasy," a controlled substance under 21 U.S.C. § 801 *et seq.*, and that Respondent was purchased with funds derived from the sale of ecstasy. The Government asserts its claim to the Respondent based on 21 U.S.C. §§ 881(a)(4)(C) and (a)(6) ["section 881," "subsections (4)(C) and (6)"], which state in relevant part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(4) All ... vehicles ... which are used ... to transport, or in any matter facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances] ... except that

(C) no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner.

(6) All ... things of value furnished ... by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange ... except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881 (a)(4)(C), (a)(6) (1981 & Supp.1990). There is no dispute that the Respondent is an asset subject to forfeiture by the Government. This controversy arises because the Claimant asserts that he qualifies as an "innocent owner" within the exceptions to subsections (4)(C) and (6). The Claimant is a criminal defense lawyer who asserts an ownership interest in the Respondent as partial satisfaction of legal fees for the representation of Saxon Hatchett.[1]

## FINDINGS OF FACT

The events leading to the instant forfeiture action are as follows:

1. On April 29, 1989, Saxon Hatchett was arrested along with three other male defendants and charged with serious drug offenses which also involved a conspiracy to commit murder. Hatchett was a 19 year-old college student at the time of the arrest.

2. After they were arrested, the defendants contacted Carlos Cardenas, a criminal defense lawyer who had represented them in previous matters. Cardenas was informed about the charges against the defendants, and also knew that the Respondent had been used to facilitate the crimes charged. Based on the advice of Cardenas, Hatchett had the car taken to a remote parking lot.

3. Because Cardenas was unable to represent the defendants in federal court, he contacted the Claimant regarding his availability in the matter. The Claimant met Saxon Hatchett for the first time on May 1, 1989, in a meeting of the Claimant, Hatchett, and Cardenas, prior to Hatchett's arraignment before the U.S. Magistrate.

4. At the forfeiture hearing before this Court on September 28, 1990, the Claimant testified that he made an oral agreement during the May 1, 1989 meeting to represent Saxon Hatchett for $50,000; the fee was to be satisfied partially by $6500 in cash that Hatchett had already given to Cardenas in anticipation of his legal representation, and a 1977 Porsche Carrera 911, which is the Respondent in this litigation. The Claimant testified that because he appraised the value of the Respondent to be approximately $15,000, he asked Hatchett whether his family could provide the additional funds for the representation.

---

1. On July 24, 1989, Hatchett waived in a plea agreement with the Government all right, title, and interest in the Respondent. Further, he acknowledged that the Respondent was used to facilitate the sale of 40,000 dosage units of ecstasy and that the Respondent constituted proceeds from unlawful controlled substances trafficking. Hatchett did not file a claim or answer in this action.

5. The Claimant testified that Hatchett told him he had a "rich grandmother" and that "money was no problem." On this information, the Claimant testified that he and Cardenas telephoned Hatchett's father, Dr. Ronald Hatchett. There is dispute over whether the conversation occurred on the evening of May 1, or May 2, 1989.[2] In any event, Dr. Hatchett testified that he told the Claimant during the conversation that he was not "wealthy," and did not have the funds, but that he would inquire about borrowing the money from Hatchett's grandmother. Further, in response to the Claimant's mentioning that the Respondent was being used in partial satisfaction of the fees, Dr. Hatchett testified that he asked, "What car?" He then informed the Claimant that the Respondent had not been provided to Hatchett from his "wealthy" family, and that Hatchett received only $600.00 per month from his family for living and educational expenses.

6. The oral contract was not put into writing until May 2, 1989, when Hatchett signed a form contract of the Claimant, which specified in handwriting that legal fees were to include the $6500 from Cardenas, but which made no mention of the Respondent.

7. The Claimant obtained possession of the Respondent on May 2, 1989, when he drove to the parking lot where the car had been taken on the advice of Cardenas.

8. The Government seized the Respondent from the Claimant's home and office premises pursuant to a valid seizure warrant on May 18, 1989.

9. Saxon Hatchett did not assign legal title to the Claimant until June 5, 1989.

The following is a brief history of the ownership of the Respondent as it is relevant to this action:

1. Saxon Hatchett purchased the Respondent in 1988, and received the title on September 16, 1988. He did not register the transfer in ownership with the State Department of Highways and Public Transportation at that time.

2. It was not until May 26, 1989 that title was issued to Saxon Hatchett.

3. The Claimant has in his possession an unrecorded certificate of title showing that Hatchett assigned title to the Claimant on June 5, 1989.

4. On May 2, 1989 Austin Police Officer Ed Booth informed the Claimant by telephone that the Respondent was subject to forfeiture by the Government. The Claimant did not at that time reveal the location of the Respondent.

5. On May 4, 1989, before Hatchett's detention hearing, DEA Special Agent James Hughes also informed the Claimant that the Respondent was subject to forfeiture, and that the Government "was looking for it." The Claimant did not respond at that time, but informed the Court at the close of the hearing that the Respondent was being used in partial satisfaction of his legal fees.

## CONCLUSIONS OF LAW

██ It is well established that a party seeking to challenge the Government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of his standing to contest the forfeiture. *See United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars in United States Currency,* 661 F.2d 319, 326 (5th Cir.1981). To establish standing to contest forfeiture, a claimant must show "a facially colorable ownership interest of either a legal or equitable nature and mere physical possession is not sufficient to confer standing to contest forfeiture." *See United States v. $321,470.00 in United States Currency,* 662 F.Supp. 904, 906 (M.D.La.1987) *quoting United States v. One 18th Century Co-*

---

**2.** Dr. Hatchett testified that he was unable to remember if the conversation took place on May 1 or May 2. He also stated that his testimony at the May 4 detention hearing that the conversation occurred on "Monday night" (May 1) was likely to be correct because his memory was more "fresh" at that time. Dr. Hatchett noted that the only way to be certain of the date was for the Claimant to submit its telephone records to show when the call was made from the Claimant's office to Dr. Hatchett. The Claimant did not submit such records.

*lombian Monstrance,* 797 F.2d 1370 (5th Cir.1986), rehearing denied with opinion 802 F.2d 837, 838 (5th Cir.1986), *cert. denied sub nom., Newton v. United States,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987).

The first issue for resolution in this action is whether the Claimant has an ownership interest in the Respondent sufficient to establish standing to contest the forfeiture under section 881. The evidence before the Court establishes that, in addition to being the proceeds of illegal drug trafficking, the Respondent was used to facilitate an illegal drug sale on April 26, 1989, at which time it was owned by Saxon Hatchett. According to the Claimant's testimony, Hatchett agreed to give the Respondent to the Claimant in partial satisfaction of legal fees before his arraignment on the afternoon of May 1, 1989. The Claimant argues that the agreement contemplated an assignment of ownership that became effective at that time. Hatchett's testimony, however, seemed to characterize the agreement as one in which the Claimant would "hold" the car to sell, and apply the proceeds to his legal fees. Hatchett testified that he "owned" the car, but that he gave it to the Claimant to "hold to sell to pay fees." Hatchett testified that the Claimant "wanted the money—an asset in the hand," and that the Claimant was going to sell the Respondent, with Hatchett's help, and the help of his girlfriend. At the time of seizure, the Respondent was in the Claimant's possession, but Hatchett did not assign title to the Claimant until June 5, 1989.

A claimant may seek shelter under the innocent owner exception to section 881 even though his purported property interest did not arise until after that property was used in or derived from an illegal drug transaction. *See United States v. One Single Family Residence Located at 2901 S.W. 118th Court, Miami, Florida,* 683 F.Supp. 783, 787 (S.D.Fla.1988). Although section 881 codifies the "relation back doctrine," under which the United States interest in forfeitable property vests "upon commission of the act giving rise to forfeiture," *see id.,* a claimant under section 881 is permitted to establish that he was without actual knowledge of the act giving rise to the forfeiture, and thereby to avoid forfeiture under the "innocent owner" exception. *See id.* at 788.

Clearly, the Claimant did not acquire any interest in the Respondent until after the events which subjected it to forfeiture. But if the Court accepts the argument of the Claimant at the forfeiture hearing, then the Claimant had at least an assignment of a specific asset on May 1, 1989, which according to the Claimant was before he had information regarding the suspicious nature of the Respondent. The Court does not find the resolution of this issue to be quite so simple, however. According to the testimony of Dr. Hatchett, he told the Claimant that he could not provide even half of the $50,000 legal fees, and also that if he was unable to borrow the funds from Hatchett's grandmother, then Hatchett "would have to get a court-appointed lawyer." Dr. Hatchett testified that the Claimant's response was that if Dr. Hatchett was able to come up with the half of the fee not covered by the $6500 and the proceeds of the Respondent, then the Claimant "would proceed." Otherwise, Dr. Hatchett testified that the Claimant said Hatchett would have to find another lawyer. This testimony is corroborated by the testimony of Hatchett that characterized the $50,000 as an initial retainer, in contemplation of representation "once I was able to get the rest from my grandmother." Based on this testimony, the Court is hesitant to conclude that the contract for legal services, and the assignment of the Respondent in particular, was complete as of May 1, 1989. In fact, it appears to the Court that the agreement between the Claimant and Hatchett would not be complete until the Claimant was assured that he would receive the $50,000 he charged in legal fees. His conversation with Dr. Hatchett was an effort to conclude the negotiations about the fees. The Court notes that during this conversation the Claimant was informed that the car had not been provided to Hatchett from his "wealthy" family, which alone might have

prevented the Claimant from qualifying as an "innocent owner." However, the Court will assume for purposes of further analysis that the Claimant's interest vested on May 1, 1989 and was sufficient for standing in this case.

■ In deciding whether the Claimant has met the burden of proving that his interest in the Respondent should be protected based on his status as an "innocent owner," the Court must assess his state of mind upon acceptance of the property. Therefore, the Court must consider all evidence which tends to show knowledge or the absence of knowledge by the Claimant as to the illegality of the Respondent in terms of its prior use or its status as proceeds.

■ Under the innocent owner exceptions to subsections (4)(C) and (6) of the forfeiture statute, the Government need not prove, and the Court need not find, that the claimant had actual knowledge. Rather, it is the claimant's responsibility to prove the absence of actual knowledge. *See United States v. $10,694.00 U.S. Currency,* 828 F.2d 233, 235 (4th Cir.1987). Because the Government brought this action under two different subsections of section 881, the Court will address the legal standards of each subsection.

■ Section 881, subsection (4)(C) subjects to forfeiture all vehicles which are used to facilitate the sale of controlled substances, except "to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted *without the knowledge, consent, or willful blindness* of the owner." 21 U.S.C. § 881(a)(4)(C) (emphasis supplied). Therefore, the Claimant bears the burden of establishing that he had no knowledge and was not willfully blind to the fact that the Respondent was used to facilitate the sale of controlled substances in this case. In the criminal context, courts have stated that "[t]he purpose of the willful blindness theory is to impose criminal liability on people who, recognizing the likelihood of wrongdoing, nonetheless consciously refuse to take basic investigatory steps." *United States v. Hi-*

*land,* 909 F.2d 1114, 1130 (8th Cir.1990), *quoting United States v. Rothrock,* 806 F.2d 318, 323 (1st Cir.1986). The Fifth Circuit approved the following jury instruction on willful blindness:

> The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him.... a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.

*United States v. DeVeau,* 734 F.2d 1023, 1028 n. 2 (5th Cir.1984).

In the instant case, the Claimant is required to prove that he had no knowledge and was not willfully blind to the fact that the Respondent was used to facilitate the sale of ecstasy. The evidence before the Court is unfortunately scant on this point, consisting only of the Claimant's testimony at the forfeiture hearing that Cardenas, the referring attorney who was aware that the Respondent had been used to facilitate illegal drug trafficking, did not inform the Claimant of the Respondent's significant role in the crime with which the defendants were charged. In fact, it was because the defendants' 40,000 dosage units of ecstasy were stolen from the Respondent that they hired a hit man and were charged with conspiracy to commit murder. Due to the fact that Cardenas did not testify, the Court cannot establish with certainty whether the Claimant actually knew of the Respondent's facilitation of illegal drug trafficking. With regard to willful blindness, however, the Court is of the opinion that if the Claimant did not have actual knowledge at the time of the alleged oral contract on May 1, 1989, he was then willfully blind with respect to the illegality of the Respondent. The Respondent played a critical part in the criminal activities with which the defendants were charged. The Claimant testified at the forfeiture hearing that he did not know the Respondent "was involved in a crime until after the eighteenth [of May, 1989]." The Court considers the following excerpt from the testimony of Saxon Hatchett during the forfeiture hearing to be instructive:

GOVERNMENT: Did you tell [the Claimant] the Government had made a demand for the car?

HATCHETT: Well, I thought maybe he kinda figured ... No, I didn't tell him that directly ... I mean, it was cloak and dagger all the way through the way Carlos [Cardenas] was playing it ... well, Carlos didn't want to take any money or that car—Simon Soto brought it over there and he made Simon go park it way down the road somewhere and leave it somewhere.

.    .    .    .    .

GOVERNMENT: Did [the Claimant] know the car was involved in a cloak and dagger type deal?

HATCHETT: He went and picked it up in a parking lot somewhere.

GOVERNMENT: Why was the car in a parking lot?

HATCHETT: Because Carlos didn't want it at his house.

GOVERNMENT: Why didn't he want it at his house?

HATCHETT: Because he was afraid he was going to get into some kind of trouble with it.

GOVERNMENT: Oh, I see ... He thought the police were looking for it?

HATCHETT: Right.

GOVERNMENT: So he hid it in some parking lot?

HATCHETT: Right.

Under the willful blindness standard, the Court finds that the Claimant at least had the responsibility to take the basic investigatory steps necessary to determine that his fees were not being satisfied with a major instrumentality of the crime charged against his client. It is the Claimant's burden to establish that he did not know, and was not willfully blind to this fact, and he has not satisfied the Court of either.

■ The Respondent is also subject to forfeiture under subsection (6), which states that proceeds traceable to an exchange involving a controlled substance are forfeitable, except "to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted *without the knowledge or consent* of that owner." 21 U.S.C. § 881(a)(6) (emphasis supplied). Under this provision, the Claimant bears the burden of establishing that he did not know that the Respondent was the proceeds of illegal drug trafficking. The defense turns on the claimant's actual knowledge, not constructive knowledge. *See United States v. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 906 (11th Cir.1985).

The respective parties disagree over the standard to be imposed under this subsection. The "willful blindness" language of subsection (4)(C) is absent from subsection (6), but the legislative history behind the differing language may suggest that Congress intended that a claimant prove the absence of all three circumstances—knowledge, consent, and willful blindness—to prevail under any of the subsections of section 881 to which the innocent owner exception applies. *See United States v. Property Known as 890 Noyac Road, Noyac, New York,* 739 F.Supp. 111, 115 (E.D. N.Y.1990) (statements by Senator Dole proposing amendment to add "willful blindness" language to remedy incorrectness of court holding). Obviously, this view would increase the burden of proof placed upon the Claimant. Other courts have expanded the burden of proof under section 881 by requiring that section (6) claimants "demonstrate both that [they] lacked actual knowledge and that [they] did everything reasonably possible." *See United States v. One Single Family Residence Located at 2901 S.W. 118th Court, Miami, Florida,* 683 F.Supp. 783, 788 (S.D.Fla.1988); *United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884, 888 (11th Cir.1989). The Court feels that the additional burden of the "did everything reasonably possible" language, if appropriate, is best suited to a

situation in which the Claimant has an ownership interest in the forfeitable property *before* the occurrence of the events which subject it to forfeiture. Such is not the case here.

In attempting to satisfy the burden of proof under subsection (6), the Claimant testified that he did not know that the Respondent was purchased with the proceeds of illegal drug trafficking at the time of the alleged contract for legal services. The Court must observe the totality of the circumstances in assessing whether the Claimant has met his burden here as well. At the time of the alleged contract, Saxon Hatchett was a 19 year-old college student with $6500.00 in cash and a 1977 Porsche. The Claimant testified that he believed Hatchett came from a wealthy family. The Claimant has argued that under these circumstances, there was no cause for him to suspect that the Respondent constituted illegal proceeds. However, the Court believes it very suspicious that the Claimant took possession of the Respondent in the same "cloak and dagger" method under which it was previously kept. The actions necessary to obtain the Respondent should have provided some notice to the Claimant. Further, the defendants were students charged with serious drug offenses, which should have provided additional notice. The Court is aware of the fact that these observations do not establish and prove actual knowledge, and also of the ambiguity as to whether willful blindness is sufficient cause for rejection of the innocent owner defense under subsection (6). However, again, the Court notes that it is the Claimant who bears the burden of proving lack of actual knowledge, and arguably, willful blindness. Based on the testimony and evidence before it, the Court is convinced of neither.

██ Even if the Court looks only to the precise moment of the alleged oral contract in assessing the Claimant's state of mind, it is difficult to conclude that he was an "innocent owner." This is true even if the Court rejects the additional burdens imposed under the subsection (6) "willful blindness" standard, and the "did every-

thing reasonably possible" language of some courts. This Court has adhered to the subjective knowledge standard of the civil forfeiture statute in finding that the Claimant has failed to meet his burden, but nevertheless is of the opinion that this case contains additional facts that warrant consideration under the section 881 analysis. Assuming that a valid oral contract was made for legal services prior to the arraignment of Saxon Hatchett on May 1, 1989, and further assuming that the Claimant had no knowledge that the Respondent was used to facilitate illegal drug trafficking and constituted proceeds of illegal drug trafficking, the Court still views the application of the innocent owner exceptions as unmerited in this case. On May 2, 1989, the Claimant was informed by telephone conversation with Austin Police Department Officer Ed Booth that the Respondent was subject to forfeiture by the Government. Further, on May 4, 1989, DEA Special Agent James Hughes informed the Claimant before Hatchett's detention hearing that the Respondent "belonged to the Government," and that the Government was "looking for the car." In addition, on May 1 or May 2, 1989, the Claimant learned through a telephone conversation with Dr. Hatchett that the Respondent had not been purchased for Hatchett by his "wealthy" family, that his family was not "wealthy," and that his father had no knowledge of Hatchett owning the Respondent. The Claimant did not obtain possession of the Respondent until May 2, 1989. By that time, it seems certain that he would have received information regarding the charges against his client, Hatchett, if he did not receive such information during the original meeting between himself, Hatchett, and Cardenas on May 1, 1989. However, the Claimant suggests that he did not become aware of the illegality of the Respondent until May 18, 1989, the date of seizure.

██ If a lawyer receives property under suspicious circumstances, he has a duty to investigate further into the origin of the property in order to establish that he has not been "willfully blind" as to the illegal nature of the property. This Court is of

the opinion that even in a case in which a lawyer is truly ignorant of any wrongdoing at the precise moment of acquisition of the property, but subsequently learns within a reasonable period (here, a period as short as a few days) that the property is proceeds or has been used to facilitate a crime, that lawyer should not be considered an "innocent owner" under the exceptions to section 881.

The Court is aware of the hardships this may impose on criminal defense lawyers, but such burden is contemplated by the asset forfeiture provisions, which aim to prevent criminals from using the proceeds of their illegal activities to obtain "the best defense counsel that money can buy." Of course, the Government also has responsibilities under the forfeiture provisions. For instance, the Government has a duty to initiate forfeiture proceedings within a reasonable period of time. It would be inequitable for the Government to wait several months or a year to initiate such proceedings until a lawyer has spent many hours in the preparation of a defense on behalf of his client. In this case, however, seizure was effected on May 18, 1989, only seventeen days after the oral contract for legal services was allegedly made. Moreover, the Claimant received more than sufficient actual notice that the Respondent was subject to forfeiture before he performed any significant legal services on behalf of Saxon Hatchett. Such information came, at the latest, one day after the contract was made. In the Court's opinion, the Claimant assumed the risk of forfeiture under these circumstances, and he has failed to establish the "innocence" required under the exceptions to section 881. Any other result would require that the Court view the facts of this case with "willful blindness."

ACCORDINGLY, IT IS ORDERED that the Government's Verified Complaint for Forfeiture is hereby GRANTED.