622 A.2d 261

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. AMERICAN BANKING INSURANCE COMPANY OF FLORIDA AND LOUIS RUSSO BAIL BONDS AGENCY, INC., DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted December 15, 1992—Decided March 18, 1993.

Before Judges PETRELLA, D'ANNUNZIO and KEEFE.

*Michael J. Sluka,* attorney for appellants.

*Carmen Messano,* Hudson County Prosecutor, attorney for respondent (*Joseph J. Talafous, Jr.,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

This appeal by American Banking Insurance Company of Florida (American) and Louis Russo Bail Bond Agency (Russo Agency) is from a Law Division decision which forfeited to the State certain real property owned by one Pedro Gonzalez. The property was encumbered by a mortgage given as security for a bond posted by American to ensure the appearance of Pedro Gonzalez in court on various drug charges.

Although Gonzalez owned the property at 364–366 Whiton Street in Jersey City (the property), when he was arrested on May 20, 1990, he did not reside there. One Roberto Costano, arrested at the same time as Gonzalez, resided there and was considered a co-conspirator with Gonzalez in a drug distribution scheme. A police search uncovered approximately 750 grams of cocaine on a window ledge in Costano's apartment.

Prior to posting the bond and accepting the mortgage, the Russo Agency conducted a title search on the property which indicated title was free and clear of liens, encumbrances and defects in title. It also sent an agent to view the property. No notice was posted to indicate the property was subject to forfeiture. On or about May 25, 1990, American and Russo Agency posted a $100,000 bail bond for Gonzalez. The mortgage to secure the bond, recorded May 29, 1990, described Gonzalez as mortgagor and American and Russo Agency as mortgagees.

On August 10, 1990, the Hudson County Prosecutor instituted a forfeiture action in the name of the State against the property of Gonzalez. Appellants were not a party to that action, nor given notice. *See N.J.S.A.* 2C:64–3c. On January

28, 1991, a default judgment was entered against the property which vested title "in the Prosecutor of Hudson County" as of February 22, 1990.[1] Thereafter, on June 3, 1991,[2] the prosecutor filed a complaint to settle the validity of the mortgage held by American and Russo Agency. An order to show cause was entered requiring them to show why they should not be enjoined from foreclosing or otherwise disposing of the property. A notice of *lis pendens* was filed with the Hudson County Register. American and Russo counterclaimed.

When the State moved for summary judgment[3] the trial court adjourned the return date of the order to show cause to the return date of the summary judgment motion. On that date the Law Division Judge declared the mortgage void and entered judgment in favor of the State. The trial court rejected the mortgagees' argument that their interests were protected by *N.J.S.A.* 2C:64-5 (hereinafter Section 5). Section 5 provides in part that a forfeiture shall not affect the rights of "any person holding a perfected security interest in property." Relying on *One 1985 Nissan,* 889 *F.*2d 1317, 1320 (4th Cir.1989), and applying the relation back doctrine, the trial court ruled that Section 5 does not protect perfected security interests created after the criminal act giving rise to the forfeiture.

The Russo Agency and American argue on appeal that as holders of a perfected security interest in the property their interest is excepted from forfeiture by *N.J.S.A.* 2C:64-5. They also contend that equity demands that they not lose their

---

[1] The State says that as a result of surveillance and wiretaps it established by this date that Gonzalez, Costano and Princess Cid, Gonzalez's wife, were co-conspirators in a cocaine distribution scheme. The State's brief does not comply with *R.* 2:6-2(a)(4).

[2] As to Russo Agency and American the proceeding was beyond the 90 day period in *N.J.S.A.* 2C:64-3a and c.

[3] The notice of motion for summary judgment is not included in the record.

security interest in the property.[4]

## I.

Forfeiture of property used in criminal activity is governed by *N.J.S.A.* 2C:64–1 *et seq.*, as initially enacted by *L.* 1978, *c.* 95, effective September 1, 1979, as part of New Jersey's adoption of a "Code of Criminal Justice." Chapter 64 superseded a series of other statutes.[5]

Prior to enactment of Chapter 64 of Title 2C, New Jersey case law generally held that title to contraband vested in the prosecuting agency as of the moment of the illegal act, leaving a subsequent taker with nothing to acquire or encumber. In *Spagnuolo v. Bonnet*, 16 *N.J.* 546, 109 *A.*2d 623 (1954), the dispute was between Essex County and the Internal Revenue Service (IRS) over title to money (contraband gambling proceeds) seized by the sheriff in a raid on a lottery operation. The IRS obtained a tax lien several weeks after the money was seized. It argued that the State only had a contingent property right until the order of forfeiture. The Court rejected this argument, stating:

> Where a forfeiture is absolute under the statute, [*N.J.S.A.* 2A:152–6 to 11, now repealed] as it is here, the judgment of condemnation or forfeiture when entered relates back to the Commission of the wrongful act and takes date from the wrongful acts, not from the date of sentence or decree. *United States v. 1960 Bags of Coffee*, 8 *Cranch* 398, 3 *L.Ed.* 602 (1814); *In re Henderson's Distilled Spirits*, 14 *Wall* 44, 81 *U.S.* 44, 20 *L.Ed.* 815 (1872), ...
>
> [16 *N.J.* at 559–560, 109 *A.*2d 623].

*Spagnuolo* held that under then established law a transfer of any interest after the illegal use would not defeat the forfei-

---

4 It is not clear from the record, but it appears that Gonzalez absconded. Appellants state in their brief that bail was forfeited, although there is no citation in the record to this. *See R.* 2:6–2(a)(4).

5 *See N.J.S.A.* 2A:151–16; 2A:152–6 and 7, now repealed.

ture, even a sale to a bona fide purchaser with no notice of such use. *Id.* at 560, 109 *A.*2d 623.

Likewise, in *Farley v. $168,400.97*, 55 *N.J.* 31, 259 *A.*2d 201 (1969), Hudson County contended one Joseph Moriarty forfeited moneys because of his gambling activities. As in *Spagnuolo,* the IRS asserted a tax lien, this time one day before the seizure of the money. The dispute was whether the contraband gambling receipts properly belonged to Hudson County or the IRS. No other claimants were involved. *Farley* considered it irrelevant that the interest of the IRS was created before the seizure or the order of forfeiture. "[T]he forfeiture takes place upon the occurrence of the forbidden act or omission unless the statute provides otherwise...." *Id.* at 40, 259 *A.*2d 201.

The rule of a forfeiture judgment's relation back to the time of the offense is reflected in other cases. *See State v. Cavassa,* 228 *N.J.Super.* 204, 208, 549 *A.*2d 458 (App.Div.1988) (Only the judgment of forfeiture, once obtained relates back; forfeiture not allowed because State failed to bring forfeiture action within statutory period.); *State v. Rodriguez,* 138 *N.J.Super.* 575, 578, 351 *A.*2d 784 (App.Div.1976), *aff'd o.b.,* 73 *N.J.* 463, 375 *A.*2d 659 (1977) (Relation back rule not applied because money was not established to have been contraband proceeds of gambling.). Significantly, a forfeiture action is still required in which all holders of an interest are entitled to notice and an opportunity to contest forfeiture and claim the applicability of a statutory exception. *See Dragutsky v. Tate,* 262 *N.J.Super.* 257, 620 *A.*2d 1065 (App.Div.1993). *See also United States v. 92 Buena Vista Avenue, et al.,* —— *U.S.* ——, ——, 113 *S.Ct.* 1126, 1135, 122 *L.Ed.*2d 469 (1993). Unfortunately, Russo Agency and American were not noticed or joined in the original proceeding. *See N.J.S.A.* 2C:64–3.[6]

---

[6] Surely the Hudson County Prosecutor was aware at the time the initial forfeiture action was instituted on August 10, 1990, that a bond had been posted. Presumably, he had at least some inkling that the house was used as collateral to secure the bond. If so, the initial forfeiture proceeding was

This appeal implicates the viability of the approach in *Spagnuolo* and *Farley*, after enactment of Chapter 64, and whether appellants may be considered bona fide purchasers, or the equivalent.

## II.

What was considered contraband subject to forfeiture was narrower under pre-Code statutes, *see State v. Sherry*, 86 *N.J.Super.* 296, 304–305, 206 *A.*2d 773 (App.Div.), *rev'd on other grounds*, 46 *N.J.* 172, 215 *A.*2d 536 (1965).[7]

*N.J.S.A.* 2C:64–1 broadened the scope of forfeiture actions. It includes property declared to be prima facie contraband as well as other property defined as contraband by virtue of use in unlawful activities. As now in effect it states:

> a. Any interest in the following *shall be subject to forfeiture* and no property right shall exist in them:

---

defective. Since there is to be a remand the issue of timeliness may be pursued in the trial court. *See State v. Cavassa, supra,* 228 *N.J.Super.* at 210, 549 *A.*2d 458.

[7] *See, e.g., N.J.S.A.* 2A:130–4 (chattels, liquors or other personal property in a building or place and possessed, used or intended to be used to maintain a nuisance) (now repealed); *N.J.S.A.* 2A:152–5 (seizure of obscene and indecent items) (now repealed); *N.J.S.A.* 2A:152–7 (money seized in connection with gambling offenses) (now repealed); *N.J.S.A.* 2A:151–16 (all firearms unlawfully possessed, carried, acquired or used declared to be nuisances and are forfeited to the State) (now repealed). The prior forfeiture laws applied mainly to articles illegal in and of themselves or to those used in a prohibited way, such as illegal weapons and proceeds of such criminal activity, including gambling proceeds, and obscene materials. Prohibited drugs were also subject to forfeiture. *See N.J.S.A.* 24:18–38 (narcotic drugs unlawfully possessed) (now repealed). The prior law did not generally include illegally used items, incidental to and not necessary for the commission of the crime, such as a building as in the instant case. *Cf. N.J.S.A.* 24:18–38.1 to 38.3 (vehicle, boat or aircraft used in violation of the Uniform Narcotics Drug Law) (now repealed); *N.J.S.A.* 33:1–66(b) (all alcoholic beverages, fixtures and personal property in premises in which an illicit beverage is found), 66(c) (any vehicle containing alcoholic beverages manufactured or sold in violation of regulations). The Code provisions' potential reach to property incidental to a crime is greater than in the previous law. *See* 2C:64–1a(2), (3) (discussed *infra*).

(1) Controlled dangerous substances, firearms which are unlawfully possessed, carried, acquired or used, illegally possessed gambling devices and untaxed cigarettes. These shall be designated prima facie contraband.

(2) *All property which has been,* or is intended to be *utilized in furtherance of an unlawful activity, including, but not limited to,* conveyances intended to facilitate the perpetuation of illegal acts, or *buildings or premises maintained for the purpose of committing offenses against the State.*

(3) Property which has become or is intended to become an integral part of illegal activity including, but not limited to, money which is earmarked for use as financing for an illegal gambling enterprise. (Emphasis supplied).

As previously indicated, section 5 protects certain interests from forfeiture. It is titled "Seized property; rights of owners and others holding interests," and now reads:

a. *No forfeiture* under this chapter *shall affect the rights of* any lessor in the ordinary course of business or *any person holding a perfected security interest in property subject to seizure unless it shall appear that such person had knowledge of or consented to any act or omission upon which the right of forfeiture is based.* Such rights are only to the extent of interest in the seized property and at the option of the entity funding the prosecuting agency involved may be extinguished by appropriate payment.

b. Property seized under this chapter shall not be subject to forfeiture if the owner of the property establishes by a preponderance of the evidence that the owner was not involved in or aware of the unlawful activity and that the owner had done all that could reasonably be expected to prevent the proscribed use of the property by an agent. A person who uses or possesses property with the consent or knowledge of the owner is deemed to be the agent of the owner for purposes of this chapter.

c. Property seized under this chapter shall not be subject to forfeiture if the property is seized while entrusted to a person by the owner or the agent of the owner when the property has been entrusted to the person for repairs, restoration or other services to be performed on the property, and that person, without the owner's knowledge or consent, uses the property for unlawful purposes.

[Emphasis supplied].

This section evolved gradually.[8]

Under subsection a of *N.J.S.A.* 2C:64–5, a perfected security interest held by one with no knowledge of the proscribed

---

[8] *N.J.S.A.* 2C:64–5, amended three times since enactment in 1978, originally read:

No property subject to seizure under this chapter shall be forfeited unless it shall appear that the owner of the property or his agent was a consenting

activity is exempt from forfeiture. *See State v. 1979 Pontiac Trans Am, Color Grey,* 98 *N.J.* 474, 485, 487 *A.*2d 722 (1985). The State nonetheless argues that this does not necessarily resolve the issue here because the lien arose after the criminal act. It relies on a codification of the relation back rule in *N.J.S.A.* 2C:64–7, which states in part, "Title to property forfeited under this chapter shall vest in the entity funding the prosecuting agency involved at the time the item was utilized illegally, or, in the case of proceeds, when received." In other words, the vesting of title in Hudson County is argued to relate back to the time the property was illegally used. *See Farley v. $168,400.97, supra,* 55 *N.J.* at 40, 259 *A.*2d 201; *Spagnuolo v. Bonnet, supra,* 16 *N.J.* at 559–560, 109 *A.*2d 623. We noted in *State v. Cavassa, supra,* 228 *N.J.Super.* at 208, 549 *A.*2d 458, however, that for non-prima facie contraband, only "the judgment of forfeiture, once obtained, relates back...."

---

party or privy to its unlawful possession, use or sale, nor shall any forfeiture under this chapter affect the rights of any person holding a interest in property subject to seizure under this chapter unless it shall appear that such person had knowledge of or consented to any act or omission upon which the right of forfeiture is based.

A 1979 amendment (*L.*1979, *c.* 344, § 5, effective January 23, 1980) removed "under this chapter" after the phrase "in property subject to seizure" and added a second sentence: "Such rights are only to the extent of interest in the seized property and at the option of the entity funding the prosecuting agency involved may be extinguished by appropriate payment." The 1981 amendment (*L.*1981, *c.* 290, § 50, eff. September 24, 1981) rewrote the first sentence to read substantially as section (a) of *N.J.S.A.* 2C:64–5 reads now, and provided that the rights of innocent lessors and holders of perfected security interests are not extinguished by forfeiture. *L.*1986, *c.* 79, eff. August 6, 1986, amended this section to add "in the ordinary course of business" after "lessor," and two new subsections, (b) and (c). The existing provision became subsection (a). Statements by the Assembly Judiciary Committee, the Senate Judiciary Committee, and the Sponsor of A–324 (1986), all declare: "This bill also clarifies that the protection afforded to those who lease motor vehicles is intended to protect those who lease cars in the ordinary course of business. It is not intended to protect those who enter into sham lease arrangements for the purpose of avoiding the forfeiture of motor vehicles used in criminal activities."

The question to be resolved then, bearing in mind the general disfavor of forfeitures, *see State v. 1979 Pontiac Trans Am, Color Grey, supra,* 98 *N.J.* at 481, 487 *A.*2d 722; *State v. Cavassa, supra,* 228 *N.J.Super.* at 209, 549 *A.*2d 458; *State v. One (1) Ford Van Econoline,* 154 *N.J.Super.* 326, 381 *A.*2d 387 (App.Div.1977), *certif. denied,* 77 *N.J.* 474, 391 *A.*2d 489 (1978), is the construction of 2C:64–5 and 2C:64–7 and whether section 5 protects from forfeiture property (other than prima facie contraband) acquired subsequent to the illegal act. The house here is, of course, property other than prima facie contraband.

The historical notes which follow *N.J.S.A.* 2C:64–5 and 7 state that these sections are new and are not derived from any prior statutory law. That these provisions represent a change in New Jersey's forfeiture law is reflected in the sponsor's statement to Senate Bill 3410 (1979), an early amendatory bill, which said with respect to contraband monies:

> The purpose of the bill is to restore the prior law relative to forfeiture of *money* seized in connection with illegal gambling which will be repealed when the new penal code takes effect. *It repeals the provisions of the penal code concerning forfeitures of property unlawfully possessed or involved in unlawful activities* and deletes the repeal of the prior law.
>
> *The provisions of the penal code relative to forfeitures would substantially change the law in this area.* It would deprive counties of forfeited moneys from illegal gambling activities. It would also make the procedure for effectuating forfeiture more difficult.
>
> This bill would leave the law relative to forfeiture as it is. This will provide time for further consideration of this subject by the parties affected, and for development of a revision of the law relative to forfeitures which is more satisfactory to all interested parties. (Emphasis supplied).

The committee statement for the Senate Committee Substitute for S–1537 (1981) (2nd OCR) includes the following:

> Section 50 [which ultimately became section 47 of the law amended *N.J.S.A.* 2C:64–2] deletes the requirement that a forfeiture action be instituted against prima facie contraband where no conviction is obtained. Due to the nature of prima facie contraband it should be automatically forfeited subject only to the rights of owners and other innocent interest holders.
>
> Section 53 [which became section 50 of the law, and amended *N.J.S.A.* 2C:64–5] while preserving the right of an innocent owner, makes clear that a person who loans his property to another and who knowingly permits it to be used in violation of this chapter will suffer forfeiture. Further, it makes clear that the

exception to forfeiture is available to a secured party who has a perfected security interest in property and to a lessor. The distinction between a lease situation and a loan situation is justifiable since loaning is often a method of avoiding forfeiture.

Appellants rely on the above quoted paragraphs in that committee statement. This legislative history, however, does not expressly state whether these exceptions to forfeiture were intended to apply both to bona fide interests held before the illegal use and those obtained thereafter. But, the language of section 5 is broad enough to protect from forfeiture bona fide perfected security interests created after the item or property has been used illegally.

As noted, the law does not favor forfeitures. *See State v. 1979 Pontiac Trans Am, Color Grey, supra,* 98 *N.J.* at 481, 487 *A.*2d 722 (*N.J.S.A.* 2C:64–5 held to exempt not only lessors and lienholders "but also innocent owners who can prove that they were 'not involved in and unaware of wrongful activity, [and] that [they] had done all that reasonably could be expected to prevent the proscribed use of [their] property.'"); *State v. One (1) Ford Van Econoline, supra,* 154 *N.J.Super.* at 331, 381 *A.*2d 387. "[P]rovisions relieving owners from the application of forfeiture statutes are liberally construed" to avoid forfeiture. *State v. 1979 Pontiac Trans Am, supra,* 98 *N.J.* at 483, 487 *A.*2d 722.

*State v. Somerset Cent. Corp.,* 216 *N.J.Super.* 716, 719–721, 524 *A.*2d 893 (App.Div.1987), applied this liberal construction. The issue was whether property acquired by an innocent purchaser, after it had been the subject of an insurance fraud, was subject to forfeiture under *N.J.S.A.* 2C:64–1a(2). We noted the admonition in *State v. 1979 Pontiac Trans Am, supra,* 98 *N.J.* at 482, 487 *A.*2d 722, that too broad a reading of the statute could support an unconstitutional taking and concluded that the innocent buyers of a pleasure boat who took title subsequent to the illegal act were not affected by any forfeiture. We rejected the State's argument that title vested immediately in it when the boat was used illegally. The boat "was never the subject of

a theft or used for a criminal purpose. Moreover, to turn the result in the case on notions of 'title' would produce an unconstitutional interpretation of the statute and a commercially undesirable policy result." 216 *N.J.Super.* at 720–721, 524 *A*.2d 893.

In the instant case, the State argues that since the codefendants used the property for a criminal purpose it comes within the forfeiture provisions of *N.J.S.A.* 2C:64–1a(2). This is so, but the issue is whether appellants have a protected interest under section 5.

A majority of the United States Supreme Court, interpreting an analogous federal forfeiture law and the innocent owner exception [9] of 21 *U.S.C.A.* § 881(a)(6), found no forfeiture when an innocent person takes an interest in property after an illegal use. *See U.S. v. 92 Buena Vista Avenue, supra,* —— *U.S.* ——, 113 *S.Ct.* 1126. In that opinion a plurality of the Court concluded that the statutory relation-back doctrine of § 881(h) only applies after the determination of who is an innocent owner whose interest is exempt from forfeiture is made. Therefore, "The property of one who can satisfy the innocent owner defense is not subject to civil forfeiture" even if that person takes after an illegal use. The plurality also decided the

---

[9] The relation back to the time of the offense doctrine applies in federal law. *See U.S. v. 559 Stowell,* 133 *U.S.* 1, 16–17, 10 *S.Ct.* 244, 247, 33 *L.Ed.* 555 (1890) (when property is subject to forfeiture upon commission of a certain illegal act, title vests in the government at the time of the act's occurrence); *Eggleston v. State of Colorado,* 873 *F.*2d 242, 247–248 (10th Cir.1989) (claimed interest in one-ounce gold bars and approximately $1.5 million in cash), *cert. denied sub nom., Colorado Dep't of Revenue v. U.S.,* 493 *U.S.* 1070, 110 *S.Ct.* 1112, 107 *L.Ed.*2d 1019 (1990); *Simons v. U.S.,* 541 *F.*2d 1351, 1352 (9th Cir.1976) (automobile used to transport a contraband firearm); and *U.S. v. One Parcel of Real Estate Property,* 660 *F.Supp.* 483, 487 (S.D.Miss.) (purchase of property on Gulf Coast intended as an off-loading site for a shipment of marijuana transported from Columbia), *aff'd on other grounds,* 831 *F.*2d 566 (5th Cir.1987) (District Court correctly held owners must be persons, not pieces of real property). The federal relation back rule regarding controlled substances and non-prima facie contraband used in connection with crimes dealing with controlled substances is codified at 21 *U.S.C.A.* § 881(h).

common law relation-back doctrine leads to the same result because under that doctrine the government's title does not relate back to the time of the illegal act at all, unless and until there is a judgment of forfeiture. *Ibid.* A person, therefore could invoke any defense, including the innocent purchaser's defense, until the forfeiture is decreed. *Ibid.* Justice Scalia, joined by Justice Thomas, concurred in the judgment that those who take after an illegal use may still have their interest exempt from forfeiture under the innocent owner's defense but believed the statute should be read to be "an expression of the traditional relation-back doctrine ...," which can take effect only upon the entry of a judgment or order of forfeiture.

Other federal courts have made clear that good faith is required to invoke the exception. *See U.S. v. 1977 Porsche Carrera 911,* VIN 9117201924, 748 *F.Supp.* 1180 (W.D.Tex. 1990), *aff'd on other grounds,* 946 *F.*2d 30 (5th Cir.1991); *U.S. v. One Single Family Residence, Miami, Florida,* 683 *F.Supp.* 783 (S.D.Fla.1988).

The State's interpretation here would emasculate section 5. Those persons who perfected a security interest or leased property before any illegal use, and had no reason to anticipate a subsequent illegal use, would clearly not lose their interest to a forfeiture not only because of the statutory proscription, but on equitable and constitutional grounds. *See 1979 Pontiac Trans Am, supra,* 98 *N.J.* at 481–484, 487 *A.*2d 722. *Cf. State v. Jones,* 181 *N.J.Super.* 549, 438 *A.*2d 581 (Law Div.1981).

 We thus hold that absent a clear contrary legislative statement, section 5a protects those who in good faith and without knowledge (actual or constructive) of wrongdoing implicating forfeiture, take an interest in property that is not prima facie contraband, either prior to or subsequent to its illegal use. This conclusion is reinforced not only by the introductory language in *N.J.S.A.* 2C:64–1a that property "shall be subject to forfeiture," rather than being declared actually forfeited, and the fact that forfeiture as to other than prima facie contraband is made enforceable by an action instituted under

*N.J.S.A.* 2C:64–3a within 90 days of seizure, but also by the legislative intent to provide exemption from forfeiture for good faith "lessors in the ordinary course of business," and persons holding a perfected security interest. *See State v. Cavassa, supra,* 228 *N.J.Super.* at 207–208, 549 *A.*2d 458; *N.J.S.A.* 2C:64–5a.

■ The relation back doctrine in *N.J.S.A.* 2C:64–7 modifies pre-Code case law as expressed in *Spagnuolo* and *Farley* and applies to "title to property forfeited *under this chapter....*" (Emphasis supplied). The initial inquiry is to determine if *N.J.S.A.* 2C:64–5 applies. This must occur before section 7 may be invoked. Thus, the interests of innocent owners, lessors and holders of perfected security interests are declared exempt from the application of the forfeiture provisions. This approach is also consistent with the specific reference in *N.J.S.A.* 2C:64–2 (dealing with forfeiture procedures for prima facie contraband), to the section 5 exception. Since the Legislature included exceptions to forfeiture even in the section governing prima facie contraband, there can be little doubt that an exception to forfeiture may apply to subsequent good faith takers of an interest. Hence, *N.J.S.A.* 2C:64–5, now applies to protect an interest from forfeiture. Simply stated, we read the section 7 "under this chapter" language as taking into account the exceptions in the forfeiture provisions of Chapter 64 of title 2C.

*N.J.S.A.* 2C:64–5a protects appellants' interest in the property, unless they "had knowledge of ... any act or omission upon which the right of forfeiture is based." In *One Single Family Residence, supra,* 683 *F.Supp.* at 788,[10] the claimant of an interest in property had the burden of showing not only lack of actual knowledge, but also that he did all that could reasonably be expected in order to invoke the exception to the relation back doctrine. There an agent of a bail bondsman attended the bond hearing and obtained knowledge of how the property was

---

[10] We note that American was also involved in that case.

connected to the crime. For that reason, the bail bondsman also failed the second part of the test. The court pointed out a bonding company could not be an innocent owner "by hiding its head in the sand." *Id.* at 789.

The State argues that the instant case is similar to *1977 Porsche Carrera, supra,* 748 *F.Supp.* 1180, where a criminal defense attorney asserted an interest in respondent vehicle as partial satisfaction of his legal fees. The government claimed the vehicle had been purchased with funds from the sale of illegal drugs and the attorney should have a duty to investigate that it had not been purchased with proceeds from the crime charged. *Id.* at 1186. The court found it "very suspicious" that the lawyer took possession of the vehicle in the same "cloak and dagger" manner it was kept and that the individual defendants were students charged with serious drug offenses. Under these circumstances, the claimant did not meet his burden of showing he had no knowledge or did all he reasonably should have been expected to do to find out if the vehicle was connected to the sale of drugs. *Id.* at 1187. "If a lawyer receives property under suspicious circumstances, he has a duty to investigate further into the origin of the property in order to establish that he has not been 'willfully blind' as to the illegal nature of the property." *Ibid.*

In a section 5a proceeding the government must prove that the mortgagee or other interest holder had knowledge of the act upon which the right of forfeiture is based. The burden under section 5a contrasts with the preponderance of the evidence burden expressly placed on an *owner* by *N.J.S.A.* 2C:64–5b to establish he did all that "reasonably could have been expected to prevent the proscribed use of the property by an agent." *N.J.S.A.* 2C:64–5a does not require this of a lessor or holder of a perfected security interest. We nevertheless conclude that a proper inquiry in such situation should include whether the lessor or perfected security interest holder did

what reasonably could have been expected to find out if the property had been illegally used.

■ Russo Agency and American argue that the indictment against Gonzalez was not returned until five months after the issuance of the bond, and at that time more information became available than was known at the time they posted the bond and received the mortgage. They dispute the Law Division Judge's ruling on the papers which seemed to take judicial notice of a duty and that the bail bondsman should be charged with knowledge "of the laws regarding forfeiture of property used in connection with certain illegal activities ... and ... a duty to make ... inquiry beyond a title search regarding whether the property is subject to forfeiture." The judge stated this would include "inquiry of the prosecutor regarding ... potential forfeiture of ... property ... tendered as security for the bailbond ..." where drug or gambling charges are involved.

However, such knowledge should not be imputed automatically, especially under *N.J.S.A.* 2C:64–5a. A factual finding after a hearing is required.

The record before us here does not adequately reveal if the inquiries made or the circumstances should have given appellants knowledge of the alleged illegal use of the house. Specifically, the court should know what information Gonzalez gave to appellants at the time of obtaining the bond, whether the appellants had any specific information about the charge and the property from a charge sheet, bond hearing or anything of a like nature or whether appellants should have been suspicious because of the nature of the charges, the nature or locale of the building or any other relevant factors.

■ One final comment. Appellants suggest it is inequitable for them to lose not only the $100,000 put up in the form of a bond because Gonzalez failed to make a court appearance, but also their security interest in the property because the government, in return for the bond, "promised to retain the bond should the defendant [not] appear and keep his appointed court

date. No other conditions or terms were offered nor anticipated by the respective parties." Nothing indicates that the State ever promised not to institute a forfeiture action. The State was not a party to the security interest arranged between Gonzalez and American and Russo Agency. Absent a basis for an exception to forfeiture, no inequity exists by the State seeking a forfeiture of Gonzalez's property.

Reversed and remanded for further proceedings consistent herewith. No costs.